The STATE of Ohio, Appellant and Cross–Appellee,

v.

RUDGE, Appellee and Cross–Appellant.

[Cite as *State v. Rudge* (1993), 89 Ohio App.3d 429.]

Court of Appeals of Ohio,
Trumbull County.

No. 93–T–4858.

Decided July 1, 1993.

**430**

*Dennis Watkins,* Trumbull County Prosecuting Attorney, and *Peter J. Kontos,* Assistant Prosecuting Attorney, for appellant and cross-appellee.

*J. Gerald Ingram, John Juhasz* and *Mary Jane Stephens,* for appellee and cross-appellant.

NADER, Judge.

This appeal is from a decision of the Trumbull County Court of Common Pleas which declared a mistrial in the prosecution of appellee, Thomas L. Rudge, for two counts of aggravated murder with death and firearm specifications.

The jury trial on the guilt phase commenced on January 25, 1993. On February 5, 1993, the jury returned guilty verdicts on all counts and specifications. On February 8, the court met with the attorneys in the case to set a date for the second, or sentencing phase of the trial. On February 9, judgment on the

guilty verdict was entered on the court's journal. Counsel for the defense filed a "motion for mistrial or in the alternative a new trial" on February 16, 1993.

The court declared a mistrial on March 2, 1993. Based on the court's written findings of fact and conclusions of law, a new trial was ordered on March 3, 1993.

Following the scheduling conference of February 8, one of the nondeliberating alternate jurors had contacted the court's bailiff and informed him of alleged misconduct by members of the impaneled jury. The trial court's findings of fact describe the communication as follows:

"Specifically, [the alternate juror] informed [the bailiff] that [the alternate juror] had heard a male juror, prior to opening statements on January 25, 1993, make the statement that, 'We could save a lot of time and money and just hang him now.' [The alternate juror] further informed the bailiff during that telephone conference on February 8, 1993 that on the second day of trial, January 26, 1993, [the alternate juror] overheard a female juror, who had seen the Defendant having lunch at the Saratoga Restaurant state, 'He better enjoy it now, because he won't be around much longer.'"

The bailiff informed the trial judge, who immediately contacted both counsel. The trial court's findings state:

"[T]he Court conducted an in-camera examination of the nondeliberating alternate juror, and this occurred on February 11, 1993 at 4:45 p.m, with both counsel and Defendant also in attendance."

On February 22, 1993, over the state's objections, the trial court conducted in-camera examinations of the remaining jurors and nondeliberating alternate jurors. Members of the jury corroborated the previous examination, stating that they also had heard the statements.

The members of the jury identified as those having made the improper statements denied having made the statements. Several members of the jury also stated that they had read newspaper accounts of a possible mistrial and had discussed the matter among themselves.

Finding prejudice to the defendant in the "hang him now" statement, but not in the "Saratoga" statement, the court granted the defendant's motion for a mistrial and new trial predicated upon the jury misconduct. It is from this decision that appellant now appeals, raising the following assignments of error:

"1. The trial court erred in ruling that juror 'testimony' was admissible to impeach the jury's guilt phase verdict, where the proffered 'testimony' did not fall within any exception to the prohibition against such evidence contained in Ohio Rule of Evidence 606(B).

"2. The trial court abused its discretion in declaring mistrials as to the second and first phases of defendant's trial and granting of a new trial."

The defendant-appellee cross-appeals, raising the following cross-assignments of error:

"1. The trial [*sic*] erred in failing to find that juror F's statement in the Saratoga Restaurant was prejudicial to defendant.

"2. The court erred by not discharging the jury when a mistrial was ordered."

■ Prior to any consideration of the merits of appellant's assignments of error and appellee's cross-assignments of error, we must first address a threshold issue raised by the appellee. Appellee filed with this court a motion to dismiss the state's appeal. Appellee contends that no final order exists from which the state may appeal, and that if jurisdiction does exist to entertain this appeal, this court should decline to hear it in the exercise of its discretion.

The state has sought leave to appeal the actions of the trial court pursuant to R.C. 2945.67(A), which reads:

"A prosecuting attorney * * * may appeal as a matter or [of] right any decision of a trial court in a criminal case * * * which decision grants a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or grants post conviction relief pursuant to sections 2953.21 to 2953.24 of the Revised Code, and *may appeal by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case or of the juvenile court in a delinquency case.*" (Emphasis added.)

The state concedes that the circumstances for an appeal as of right do not exist in the instant case and, therefore, seeks leave to appeal according to the provision emphasized above. The state argues that, as no final verdict has issued, it is within our discretion to grant the appeal, citing *State v. Fisher* (1988), 35 Ohio St.3d 22, 517 N.E.2d 911. See, also, *State v. Ulrich* (1983), 17 Ohio App.3d 179, 17 OBR 368, 478 N.E.2d 809.

At the oral hearing of this matter, we requested that the issue of the finality of this appeal be further briefed, specifically referring to the unreported case of *State v. Bunce* (Mar. 2, 1993), Franklin App. No. 92AP–783, unreported, 1993 WL 55186.

In *Bunce,* the defendant was indicted on one count of receiving stolen property. At the close of the evidence at trial, jury instructions were given on both the principal offense of receiving stolen property and on complicity. Following the general jury verdict finding the defendant guilty of receiving stolen property, the trial court granted the defendant's motion for acquittal on the principal offense,

but declared a mistrial on the issue of complicity and further ordered a new trial on this issue. The majority found that it lacked jurisdiction over the appeal per R.C. 2945.67(A) because the judgment of acquittal of the principal offense was a final verdict. Judge Whiteside, while concurring in the dismissal for lack of jurisdiction, not only found that there was no order which would permit the state to appeal as a matter of right but further declared: "This appears to be only an order declaring a mistrial, which does not meet the requirements of R.C. 2505.02 for a final appealable order." *Id.* at 7 (Whiteside, J., concurring).

If there is no final appealable order as set forth in R.C. 2505.02, then we lack jurisdiction to entertain this appeal under either form of appeal designated in R.C. 2945.67(A). Section 3(B)(2), Article IV of the Ohio Constitution sets forth the jurisdiction of the courts of appeals. It provides:

"Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse *judgments or final orders* of the courts of record inferior to the court of appeals within the district * * *." (Emphasis added.) See, also, R.C. 2501.02 and 2953.02.

Final orders which may be reviewed by this court are delineated in R.C. 2505.02. *State v. Crago* (1990), 53 Ohio St.3d 243, 559 N.E.2d 1353. R.C. 2505.02 states in part:

"An order that affects a substantial right in an action which in effect determines the action and prevents a judgment, an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order that vacates or sets aside a judgment or grants a new trial is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial."

The appellant characterizes the action below as an order granting a new trial, thereby falling within the purview of R.C. 2505.02.[1] Appellee contends that the order for a new trial was merely an incidental consequence of the mistrial declaration, which is itself an interlocutory order.

The issue presented has been addressed recently in *Donofrio v. Amerisure Ins. Co.* (1990), 67 Ohio App.3d 272, 586 N.E.2d 1156. The opinion reads in part as follows:

"Ordinarily declaration of a mistrial and continuing a case on the trial docket is not a final appealable order. *Kauffman v. Schauer* (1929), 121 Ohio St. 478, 169

---

1. We recognize that Judge Whiteside, in his concurring opinion in *Bunce,* conceded the possibility that the order in that case "might constitute a final appealable order (as granting a new trial) under R.C. 2505.02," and based his decision on the failure of the trial court's order to dismiss any part of the original indictment, a requirement to support Bunce's appeal as a matter of right under R.C. 2945.67(A).

N.E. 566; *Latimer v. Morris* (1971), 27 Ohio App.2d 66, 56 O.O.2d 247, 272 N.E.2d 494; *Newark Shopping Ctr. v. Morris Skilken & Co.* (1964), 5 Ohio App.2d 241, 34 O.O.2d 377, 214 N.E.2d 674. A mistrial is usually declared by withdrawing a juror before a verdict is returned. A mistrial may also be ordered when a jury cannot reach a verdict. See, *e.g.*, *State v. Tubbs* (Sept. 3, 1987), Cuyahoga App. No. 53497, unreported, 1987 WL 16527 (denial of a motion to acquit following a mistrial where the jury was unable to reach a verdict is not a final appealable order); *Curtis v. Sega* (Mar. 4, 1984), Medina App. No. 1296, unreported, 1984 WL 4785 (denial of motion for judgment following a hung jury is not a final order).

"In this case, however, we are not presented with a factual situation where the jury was unable to reach a verdict. Here the jury had reached a verdict and, until the insured requested the second jury poll, all that was left for the court to do in response to their finding was to enter judgment on the verdict. Because Juror No. 8 retracted her assent the court discharged the jury and declared a mistrial. Thus, we must resolve whether a mistrial order filed after the jury returns a verdict but before entry of a judgment is a final or an interlocutory order.

"In a case interpreting the 'final order' language in R.C. 2953.02, where the trial court granted a new trial after the verdict but before the entry of judgment, the Supreme Court stated that the fact that the judgment was not entered by the court did not make the order granting a new trial interlocutory in character. *State v. Huntsman* (1969), 18 Ohio St.2d 206, 47 O.O.2d 440, 249 N.E.2d 40. 'An order granting a new trial, whether it results in vacating a judgment entry previously made or whether it dispenses with the necessity of making a judgment entry has the effect of ending the action insofar as the trial court is concerned.' *Id.* at 211, 47 O.O.2d at 443, 249 N.E.2d at 43. The court stated that if an order granting a new trial was final only if the court chose to make a judgment entry before granting a new trial, then the decision as to whether that order was appealable would rest within the discretion of the trial court. *Id.* Such a rule would be illogical and confusing. *Id.*

"Likewise, reviewing a motion for mistrial coupled with a request for a new trial in a civil matter, the Paulding County Court of Appeals held that an order setting aside a verdict and granting a new trial made before the entry of judgment on a verdict is a final appealable order. *Latimer v. Morris, supra.* In *Latimer* the court ruled that the legal effect of a new trial order is the same whether it is entered before or after the judgment is entered. The only practical difference is that before judgment is entered, grant of a new trial deprives a prevailing party of a verdict which would have been entered in its favor in the normal course of events, while the grant of a new trial after judgment deprives a

party of the judgment entered in accordance with its favorable verdict. *Id.*, 27 Ohio App.2d at 69, 56 O.O.2d at 248, 272 N.E.2d at 496.

"In the instant case, the grant of the mistrial had the practical effect of granting the insured a new trial. Cf. *Latimer, supra.* See, also, *Tullos v. Motorists Mut. Ins. Co.* (June 18, 1974), Franklin App. No. 74AP–34, unreported. We hold that after a jury returns with a verdict and the trial court grants a mistrial motion, because a juror recants during the jury poll, such an order is a final order appealable to this court. If this were not the rule, then the action of the trial court pursuant to Civ.R. 48 would be reviewable only at the discretion of the trial court. Cf. *State v. Huntsman, supra.* Such a rule would be an anomaly. See *id.*" *Id.*, 67 Ohio App.3d at 274–275, 586 N.E.2d at 1158.

The instant appeal is somewhat factually dissimilar to these prior decisions. We are concerned with a prosecution of a capital offense. A capital case involves two trial phases, which, while "not wholly 'distinct' * * * are necessarily 'interwoven.'" *State v. Hutton* (1990), 53 Ohio St.3d 36, 46, 559 N.E.2d 432, 444. They are interwoven in the sense that the same deliberating jurors in the jury trial of the guilt phase, or the properly substituted alternate jurors, must hear both phases of the case. *Id.* They are distinct to the extent that where a prejudicial error is committed in the penalty phase, the case may be remanded for resentencing, although in such an instance, the trial court may not impose the death sentence in the absence of the trial jury. *State v. Penix* (1987), 32 Ohio St.3d 369, 513 N.E.2d 744. Thus, unlike the situation in *Donofrio*, there is more left to do than the ministerial duty of entering the judgment upon the verdict. See, also, *Latimer v. Morris* (1971), 27 Ohio App.2d 66, 67, 56 O.O.2d 247, 247, 272 N.E.2d 494, 494.

We do not find this distinction to be controlling for two reasons. First, while the entire trial process has not been completed, a distinct guilt phase has terminated with a journal entry upon the verdict. As the mistrial declaration purports to vitiate a guilty verdict reached by the jury, this case more closely resembles *State v. Huntsman* (1969), 18 Ohio St.2d 206, 47 O.O.2d 440, 249 N.E.2d 40, than the situation of a hung jury.[2]

The second reason is based upon the plain language of R.C. 2505.02, as amended in Am.Sub.H.B. No. 412, 141 Ohio Laws, Part II, 3563, 3597, effective March 17, 1987, which states that a final order includes "an order that vacates or sets aside a judgment *or* grants a new trial." Normal rules of construction suggest that the statute contemplates that an order granting a new trial need not

---

2. We note that, despite the language in *Huntsman* that the jury verdict "determine[d] the action insofar as the trial court is concerned," it appears the trial judge had yet to sentence the defendant in the case.

vacate or set aside a "judgment" to be a final order. See Crim.R. 32(B) ("A judgment of conviction shall set forth the plea, the verdict or findings, and the sentence."). See, also, Crim.R. 33(B) ("Application for a new trial * * * shall be filed within fourteen days after the verdict was rendered.").

This conclusion is even more compelling when it is considered that the language of the statute prior to H.B. No. 412, under which all cited cases but *Donofrio* had been decided, used the conjunctive rather than the disjunctive connector which appears above. Cf. *Production Credit Assn. v. Derak* (June 13, 1988), Highland App. No. 633, unreported, 1988 WL 65642.

The foregoing leads us to conclude that we are presented with a final appealable order. In the interest of the administration of justice, we grant the state's motion for leave to appeal and overrule appellee's motion to dismiss.

■ In support of the first assignment of error, appellant sets forth the following issues:

"1. The prohibition in Ohio Evid.R. 606(B) against juror testimony to impeach a verdict applies to a [*sic* ] alternate jurors and is not limited to matters occurring during a jury's deliberations.

"2. The law recognizes no 'constitutional exception' to Evidence Rule 606(B).

"3. Where the juror testimony is inadmissible to impeach a jury's verdict under Evid.R. 606(B), it cannot be deemed admitted for some purportedly 'other legitimate purpose' and then utilized to impeach the jury's verdict."

All of appellant's arguments with regard to the first assignment of error rely upon the application of Evid.R. 606(B) to bar the introduction of all juror testimony, and shall be considered together.

The trial court held that Evid.R. 606(B) was inapplicable to the declaration of a mistrial with regard to the pending penalty phase of the trial. However, with regard to the guilt phase, which had concluded in a verdict of guilty, the trial court characterized its investigation into juror misconduct as impeaching the verdict and applied Evid.R. 606(B).

■ Appellant now asserts error in the trial court's artful dodging of the exclusionary result of Evid.R. 606(B). Any error committed by the trial court was in creating a distinction between mistrials declared before a verdict or judgment is rendered and those declared after a verdict or judgment is rendered. The protection of appellee's constitutional right to a fair and impartial jury does not cease simply because a verdict has been rendered. See, *e.g., United States v. Hendrix* (C.A.9, 1977), 549 F.2d 1225; *State v. Pierce* (1990), 109 N.M. 596, 788 P.2d 352; *United States v. Armstrong* (C.A.9, 1990), 898 F.2d 734 (cases in which evidentiary hearings probing juror misconduct were held after the verdict without

any consideration given to Evid.R. 606[B]); *State v. LaRue* (1986), 68 Hawaii 575, 722 P.2d 1039; and *State v. Thomas* (Utah 1989), 777 P.2d 445 (cases in which evidentiary hearings were held after the verdict inquiring into juror misconduct and finding that Evid.R. 606[B] was not violated).

*Hayes v. Toledo* (1989), 62 Ohio App.3d 651, 653–654, 577 N.E.2d 379, 380–381, states:

"By repeated decisions of this court it is the definitely established law of this state that where the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as the basis thereof. *Agricultural Ins. Co. v. Constantine* (1944), 144 Ohio St. 275, 284, 29 O.O. 426, 430, 58 N.E.2d 658, 663. See, also, *Wampler v. Bolen* (1938), 28 Ohio Law Abs. 22, paragraph five of the syllabus; *Newcomb v. Dredge* (1957), 105 Ohio App. 417, 6 O.O.2d 178, 152 N.E.2d 801, paragraph seven of the syllabus; and *Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E.2d 690, paragraph three of the syllabus."

Accordingly, this court will not reverse the decision of the trial court based upon an alleged error in its judgment entry that occurred only as a result of the trial court's attempt to bolster its determination.

Further, there exists some support for finding no violation of Evid.R. 606(B), even if applicable, on the grounds that juror partiality constitutes prejudicial extraneous material brought to the jury deliberation, upon which Evid.R. 606(B) allows juror testimony. See *People v. Smith* (1981), 106 Mich. App. 203, 212, 307 N.W.2d 441, 446; but, cf., *State v. Shillcut* (1984), 119 Wis.2d 788, 350 N.W.2d 686. Moreover, we are of the view that alternate jurors who are not present during deliberations and do not participate in rendering the verdict are not members of the trial jury for purposes of the *aliunde* rule. See *Wicker v. Cleveland* (1948), 150 Ohio St. 434, 436, 38 O.O. 299, 299, 83 N.E.2d 56, 57; see, also, *State v. Hutton* (1990), 53 Ohio St.3d 36, 559 N.E.2d 432, defining the jury in a capital murder case as all jurors, including "any properly substituted alternates." Cf. *State v. Weeks* (July 25, 1985), Franklin App. Nos. 84AP–881 and 84AP–882, unreported, 1985 WL 10092. Therefore, the alternate's testimony would constitute "outside evidence" in satisfaction of the rule. However, the better rule of law is that Evid.R. 606(B) is inapplicable to such inquiries, not that juror partiality constitutes an extraneous influence upon which a juror could testify under Evid.R. 606(B).

Evid.R. 606(B) states:

"Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect

of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However, a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes."

The Staff Note indicates that Evid.R. 606(B) is comparable to the Fed.R.Evid. 606(b), except for the requirement of "some outside evidence" known as the *aliunde* rule.

The Advisory Committee Note to Fed.Evid.R. 606(b) states:

"This rule does not purport to specify the substantive grounds for setting aside verdicts for irregularity; it deals only with the competency of jurors to testify concerning those grounds. Allowing them to testify as to matters other than their own inner reactions involves no particular hazard to the values sought to be protected. The rule is based upon this conclusion. It makes no attempt to specify the substantive grounds for setting aside verdicts for irregularity."

The purpose of Fed.R.Evid. 606(b) has been set forth in the often cited *Government of Virgin Islands v. Gereau* (C.A.3, 1975), 523 F.2d 140, 148, here being paraphrased in *State v. Shillcut* (1984), 119 Wis.2d 788, 794, 350 N.W.2d 686, 689, as follows:

"This general rule of juror secrecy fosters a number of valued public policies including: (1) discouraging harassment of jurors by losing parties eager to have the verdict set aside; (2) encouraging free and open discussion among jurors; (3) reducing incentives for jury tampering; (4) promoting verdict finality; and (5) maintaining the viability of the jury as a judicial decision-making body."

It has been held in other jurisdictions that counterparts to Evid.R. 606(B) do not apply to inquiries into misconduct, which do not threaten or reveal discussions occurring during the deliberation.[3] *State v. Stafford* (1984), 208 Mont. 324, 328–332, 678 P.2d 644, 647–648, states:

---

3. Although not critical to our analysis, we note parenthetically that the "Hang him now" statement upon which the trial court relied in its mistrial declaration was made prior to the introduction of evidence and prior to the opening arguments of counsel.

"The rule simply does not come into play because the allegations are submitted for their relevance to matters prior to the jury's deliberations: the bias and prejudice of juror Stillings. See C. Mueller, 'Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b),' 57 Neb.L.Rev. 920, 956–57 (1978). The inquiry here is not into the validity of the verdict; rather, the competency of Warren Stillings to sit as a juror in the case, and defendant's constitutional right to twelve impartial jurors are at issue."

*State v. Thomas* (Utah 1989), 777 P.2d 445, 450, cites several federal cases holding that Fed.R.Evid. 606(b) does not bar evidence demonstrating false answers during voir dire,[4] and then states:

" * * * Moreover, untruthful answers to questions posed on voir dire occur before the jury's deliberation and not during deliberation as covered by rule 606(b). Boyce & Kimball, *Utah Rules of Evidence 1983–Part II*, 3 Utah L.Rev. 467, 483 (1987), (citing Mueller, *Juror's Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b)*, 57 Neb.L.Rev. 920, 957–58 [1978] )."

*State v. LaRue* (1986), 68 Hawaii 575, 579, 722 P.2d 1039, 1042–1043, states:

"Under HRE Rule 606(b), we cannot consider the jurors' testimony as to the effect of the improper statement upon them. We can only consider whether such a statement was made (which is undisputed), and whether, given the statement, we can say that appellant had a trial before an impartial jury."

Based upon the foregoing authorities and our analysis of the issue, we hold that Ohio, despite the additional *aliunde* rule in Evid.R. 606(B), follows this line of authority and we affirm the trial court's conclusion that Evid.R. 606(B) is inapplicable to the instant action. The trial court's inquiry did not threaten or reveal discussions occurring during the jury's deliberation. The trial court properly inquired into the partiality of the jurors to determine if appellee had received a fair trial before an impartial jury. Finding partiality in the jury, the trial court properly declared a mistrial. Accordingly, appellant's first assignment of error is without merit.

■ In appellant's second assignment of error, the state contends that the trial court abused its discretion in declaring a mistrial. This contention is based upon the alleged failure of the jurors' testimony to identify the source of the statement "we should hang him now."

---

**4.** The juror in *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, did not discover the facts potentially forming the basis for his excusal for cause until well into the trial, and therefore was not untruthful during *voir dire*. Moreover, the juror's mother was determined not to be a victim of Home State's collapse.

A review of the transcript of the in-camera examination confirms that two of the jurors specifically testified that they had heard the statement in question. Although the first of these jurors stated that she was uncertain as to the identity of the person who had made the statement, the second juror was able to identify the person. Although the person identified as having made the statement denied having done so, when the second juror was questioned about this a second time, he continued to state that he "believed" he knew the identity of the person. Thus, the record before this court contains some evidence supporting the trial court's factual finding.

As a result, this court concludes that the trial court did not abuse its discretion in declaring a mistrial. The statement clearly evidences a juror who was not impartial, and instead predisposed to a guilty verdict and a death penalty. Commenting on a person's right to an impartial jury and the trial court's role in guaranteeing it, *United States v. Hendrix* (C.A.9, 1977), 549 F.2d 1225, 1227, states:

"It cannot be gainsaid that a fair system for the administration of justice must include the guarantee of 'an impartial jury' for the criminally accused. U.S. Const. amend. VI. *See generally, Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.[2d] 600 (1966); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Stone v. United States,* 113 F.2d 70, 77 (6th Cir.1940). If only one juror is unduly biased or prejudiced or improperly influenced, the criminal defendant is denied his Sixth Amendment right to an impartial panel. *E.g., Tillman v. United States,* 406 F.2d 930, 937 (5th Cir.) *vacated on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969); *Stone v. United States, supra,* 113 F.2d at 77. The trial judge has both a great responsibility and a wide discretion to give meaning to this guarantee. *E.g., Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 547–50, 96 S.Ct. 2791, 2797, 2797–98, 49 L.Ed.2d 683 [690–692] (1976); *Sheppard v. Maxwell, supra,* 384 U.S. [333] at 358–63, 86 S.Ct. 1507 [at 1519–1523, 16 L.Ed.2d 600, at 617–621]; *United States v. Doe,* 513 F.2d 709 (1st Cir.1975); *Tillman v. United States, supra,* 406 F.2d at 937; *United States v. Miller,* 381 F.2d 529, 539 (2d Cir.1967), *cert. denied,* 392 U.S. 929, 88 S.Ct. 2273, 20 L.Ed.2d 1387 (1968); *United States v. Flynn,* 216 F.2d 354, 372 (2d Cir.1954), *cert. denied,* 348 U.S. 909, 75 S.Ct. 295, 99 L.Ed. 713 (1955)."

As we believe the trial court properly exercised its discretion in declaring a mistrial as to both the guilt and penalty phase of appellee's trial, appellant's second assignment of error is without merit.

In support of his first cross-assignment of error, appellee/cross-appellant presents the following issue:

"There is prejudice to a Defendant when a juror's remarks undermine the presumption of innocence and violates [*sic*] the court's cautionary instructions."

The trial court found that there was insufficient evidence to demonstrate actual or presumed prejudice to the cross-appellant relating to the "Saratoga statement." The alternate juror who first contacted the court informed the court that on the second day of trial, upon seeing the defendant in the Saratoga Restaurant, one female juror stated, within the hearing of several other jurors, that "He better enjoy it now, because he won't be around much longer."

Based on an evaluation of the in-camera examination of all deliberating jurors and nondeliberating alternates, the trial court determined that this alternate juror "misinterpreted or did not fully hear the exact terminology of the statement made." The juror identified as having made the "Saratoga statement" explained to the court:

"The only comment, when we went down, we were talking about what it would be like, you know, if it was shoplifting or whatever and put in jail and we couldn't imagine not being able to go home and sit in your chair, and stuff; and when he [the Defendant] come in, I did make a comment, I said, you know, I don't know how I'd feel if I would get locked up, and I said, if he might happen to be convicted, I don't know how you would feel, and that was it."

Further, the two other jurors who admitted overhearing the statement testified that, contrary to the impression of the alternate juror, they recalled the comment as being made in the context of it *could* be the defendant's last meal on the outside.

We conclude that the trial court did not abuse its discretion in finding the "Saratoga statement" not prejudicial to the defendant. Cross-appellant's first assignment of error is overruled.

The cross-appellant argues in his second cross-assignment of error that the trial court erred in not discharging the jury when the mistrial was ordered.

The trial court did not decide the issue of discharge prior to the filing of the present appeal. The case has been stayed pending resolution of this appeal. As this issue is not essential to this appeal and remains pending in the trial court, it is not a final appealable order which may be presented for review. Accordingly, cross-appellant's second assignment of error is dismissed.

The trial judge, being confronted with a nonfrivolous suggestion of jury impartiality, was obligated to inquire into the possibility that fundamental notions of fairness had been infringed during appellant's trial, which resulted in the guilty verdict, and that a biased attitude within the jury might prevent a just determination of the penalty phase. The trial judge could best evaluate the deliberating

and nondeliberating jurors' testimony, and possessed very broad discretion in conducting the inquiry and in making his determination. *Nebraska Press Assn. v. Stuart* (1976), 427 U.S. 539, 547–550, 96 S.Ct. 2791, 2797–2798, 49 L.Ed.2d 683, 690–692. The United States Sixth District Court of Appeals has stated:

"The sixth amendment right to trial by jury is designed to ensure criminal defendants a fair trial by a 'panel of impartial, "indifferent" jurors.' *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 [755] (1961). When possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the sixth amendment. *See, e.g., United States v. Griffith,* 756 F.2d 1244, 1252 (6th Cir.1985); *United States v. Pennell,* 737 F.2d 521, 532–33 (6th Cir.1984), *cert. denied,* [469] U.S. [1158], 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); *United States v. Corbin,* 590 F.2d 398, 400 (1st Cir.1979). Since the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion. *See, e.g., United States v. Soulard,* 730 F.2d 1292, 1305 (9th Cir.1984); *United States v. Halbert,* 712 F.2d 388, 389 (9th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984); *United States v. Chiantese,* 582 F.2d 974, 978–79 (5th Cir.1978); *United States v. Hendrix,* 549 F.2d 1225, 1227–29 and n. 2 (9th Cir.1977)." *United States v. Shackleford* (C.A.6 1985), 777 F.2d 1141, 1145.

Upon review of the trial court's finding of facts, and an independent review of applicable law, we find no abuse of discretion by the trial court and hereby affirm its decision.

*Judgment affirmed.*

CHRISTLEY, J., concurs.

FORD, P.J., concurs in judgment only with concurring opinion.

FORD, Presiding Judge, concurring in judgment only.

While I concur in the analysis of the majority in which it concludes that the issues involved in this case are not controlled by Evid.R. 606(B), I do not share its view "that alternate jurors who are not present during deliberations and do not participate in rendering the verdict are not members of the trial jury for purposes of the *aliunde* rule." In my view, neither the *Wicker* nor *Hutton* case, *supra,* nor other Ohio authority supports this proposition.

Although *Hutton* may arguably provide a more analogous situation, the pertinent consideration in *Hutton* is at 53 Ohio St.3d at 45, 559 N.E.2d at 443, where the Supreme Court held: "However, R.C. 2929.03 speaks of the 'the trial jury.'

We hold that the 'trial jury' consists of all the jurors, including any properly substituted alternates."

It is my position that the foregoing holding dealt more expressly with definitional concepts of the status of a "trial juror" as distinguished from a purely alternate juror who would be discharged at the outset of deliberations consistent with and pursuant to Crim.R. 24(F). I do not believe that the *Hutton* conclusion on this point can be extended to modify the traditional interpretation and application of the second sentence of Evid.R. 606(B).

I write separately since the particular facts and ensuing issues arising from that predicate in this case appear to compel refocusing of the legal questions presented here. Specifically, the record in this matter appears to augur for a renewed examination as to whether the ends of justice are properly served by those authorities that opine that the second sentence in the foregoing rule should also be a bastion upon which to premise the application of the *aliunde* rule to factual occurrences involving alleged or actual jury misconduct which occur outside the actual jury deliberations. It appears to this writer that the *aliunde* rule, in states like Ohio that continue to preserve it, should not be a mechanism to interdict and inhibit penetrating probing of alleged and/or actual constitutional violations occurring during or after voir dire, such as the right to be tried before an impartial jury, where, again, these occurrences are not part of the actual deliberation. See *State v. Luoma* (Dec. 7, 1990), Montgomery App. No. 10719, unreported, 1990 WL 197944. It seems most basic to this writer that this fulcrum would be better served by an encouragement of substantive analysis over the procedural dictates of the *aliunde* rule encompassed within Evid.R. 606(B) as promulgated pursuant to Section 5(B), Article IV, of the Ohio Constitution.[1] Perhaps the Supreme Court will have occasion to reexamine this area, in this light, in the near future.

---

1. Because the Constitution grants the Supreme Court exclusive rule-making authority, it would seem appropriate that it recommend that the Rules Advisory Committee examine whether Evid.R. 606(B) should be amended in order to ensure that the *aliunde* rule not be applied to situations in which the juror misconduct occurs outside of jury deliberations.