STATE of Minnesota, Respondent,

v.

William D. WATKINS, Appellant.

No. C6–94–515.

Court of Appeals of Minnesota.

Jan. 31, 1995.

Hubert H. Humphrey, III, Atty. Gen., James P. Spencer, William F. Klumpp, Jr., Asst. Attys. Gen., St. Paul, Roger S. Van Heel, Stearns County Atty., St. Cloud, for respondent.

John M. Stuart, State Public Defender, Bruce L. McLellan, Sp. Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., and LANSING and AMUNDSON, JJ.

## OPINION

LANSING, Judge.

At a *Schwartz* hearing following a criminal trial, jurors testified that a court bailiff in the jury room referred to one of the defense attorneys as "that darky" and that jurors referred to the African–American defendant as a "darky" or "that darky" during deliberations. These references gave rise to an unrebutted presumption of prejudice to the defendant's Fifth and Sixth Amendment rights, and we reverse and remand for a new trial.

## FACTS

Stearns County charged William Watkins with first degree assault for injuries sustained by Mark Rosenberger during a fight at a party in Waite Park. Watkins and Rosenberger were both guests at the party when a racial insult led to a general outburst of violence. It is undisputed that Rosenberger sustained serious injuries, but there is

substantial dispute over who inflicted the injuries.

At trial the state presented three witnesses who stated that they saw Watkins punch and kick Rosenberger. Watkins argues that this testimony was impeached by the identifying witnesses' consumption of alcohol, inability to recognize Watkins, or obstructed views of Rosenberger during the fight. Rosenberger could not identify his assailant. The defense presented two witnesses—one of the party hosts and Watkins. Both testified that Watkins did not assault Rosenberger and that Watkins was involved in a conflict with another individual. The state argues that this testimony is impeached by either self-interest or friendship. The jury accepted the state's identification evidence and found Watkins guilty of third degree assault.

After the trial one of the jurors sent a letter to the defense attorney indicating that the verdict was tainted by racial prejudice. The juror stated that a bailiff referred to defense counsel as a "darky" or "that darky," and that some of the jurors referred to Watkins as a "darky" or "that darky." The juror also stated that other jurors said they were afraid to find Watkins guilty and that someone had to be punished for what happened to Rosenberger. Based on this letter, the district court conducted a *Schwartz* hearing.

At the *Schwartz* hearing, the court separately interviewed each juror and the two bailiffs. Four jurors testified that a bailiff referred to one of Watkins' attorneys as "that darky." Three of the four jurors said it was the male bailiff who used the term. The male bailiff denied that he had referred to the attorney in this way. The female bailiff admitted that she called the attorney "that dark fellow" or "darky." She acknowledged that she used that term in the jury room when all the jurors were present.

Two jurors stated that Watkins was referred to as "darky" during jury deliberations. The first juror estimated that the term was used eight or nine times while the second estimated it was used three or four times. A third juror said that she did not hear other jurors say "darky" but that she may have used the term. Other jurors responded equivocally stating "I didn't hear it and I didn't pay any attention to it" or "I didn't hear it but wouldn't be surprised to hear contrary evidence." Several jurors said only that they could not recall. Only one of the jurors believed that these references affected the verdict. The other jurors stated that they believed the verdict was based only on the evidence and not affected by racial prejudice.

Watkins moved for a new trial or, in the alternative, acquittal, alleging the district court improperly limited voir dire, the jury committed misconduct, the bailiff committed misconduct, and the verdict was not supported by the evidence. The court denied the motion, and Watkins appeals.

## ISSUE

Did the district court apply the correct standard in determining whether the defendant's right to a fair trial was violated?

## ANALYSIS

A court bailiff's statements about the merits of a criminal case in the presence of the jury create a rebuttable presumption of prejudice. *State v. Cox*, 322 N.W.2d 555, 558 (Minn.1982) (citing *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954)). The presumption arises because the official character of the bailiff, as an officer of the court and the state, indisputably carries great weight with a jury. *Parker v. Gladden*, 385 U.S. 363, 365, 87 S.Ct. 468, 470, 17 L.Ed.2d 420 (1966) (*per curiam*). Once the presumption attaches, the burden on the prosecution to rebut the presumption is met only by showing beyond a reasonable doubt that the asserted error did not contribute to the verdict obtained. *Cox*, 322 N.W.2d at 558 (citing *State v. Crisler*, 285 N.W.2d 679, 682 (Minn. 1979)).

Two federal circuit courts have addressed what standard should apply in determining whether disparaging racial comments affected the jury's verdict. The fourth circuit court of appeals applied a rule of automatic reversal rather than a harmless error analysis. *See Miller v. North Carolina*, 583 F.2d

701, 708 (4th Cir.1978). The second circuit concluded that the more absolute standard of automatic reversal was appropriate, but held that a new trial was required under either the harmless error or automatic reversal standard. *See United States ex rel. Haynes v. McKendrick*, 481 F.2d 152, 161 (2d Cir. 1973).

Minnesota courts have expressed a reluctance to adopt an "automatic new trial" rule for procedural or substantive errors relating to jury deliberations. *See State v. Sanders*, 376 N.W.2d 196, 204 (Minn.1985) (convicted criminal defendant seeking new trial ordinarily bears burden of demonstrating prejudicial error); *State v. Crandall*, 452 N.W.2d 708, 710 (Minn.App.1990) (applying rebuttable presumption rule when alternate is in jury room during deliberations). Instead, when a trial defect or error "affects a defendant's right to a decision by an impartial jury," a reviewing court should apply a rebuttable presumption of prejudice. *Sanders*, 376 N.W.2d at 205.

The state argues that the presumption discussed in *Sanders* and applied in *Cox* should not attach to the bailiff's and jurors' use of the disparaging racial term "darky" or "that darky" because these terms do not go to the merits of this case. The district court accepted this argument. We think the state's argument focuses on too narrow a definition of "merits" and overlooks the constitutional dimensions of the misconduct. A jury's exposure to potentially prejudicial material raises constitutional issues because it deprives the defendant of the right to an impartial jury and the right to confront the source of the material. *Cox*, 322 N.W.2d at 558 (citing *Parker*, 385 U.S. at 364, 87 S.Ct. at 470). An appeal to racial prejudice impugns the concept of equal protection, because the purpose and spirit of the Fourteenth Amendment "requires that prosecutions in state courts be free of racially prejudicial slurs." *Miller*, 583 F.2d at 707 (reviewing effect of prosecutor's racial comments, including repeated references to defendants as "these black men," in a prosecution for rape of white woman) (quoting *Haynes*, 481 F.2d at 159).

When racial considerations are injected into jury deliberations, the Sixth Amendment guarantee of a fair trial is defeated. *Tobias v. Smith*, 468 F.Supp. 1287, 1289–90 (W.D.N.Y.1979) (analyzing whether jury foreman's disparaging racial comments prejudiced jury deliberations). Demeaning references to racial groups invite jurors to view a defendant as coming from a different community than themselves and denies the defendant due process rights to a fair trial. *Haynes*, 481 F.2d at 152.

Court officials' and jurors' use of derogatory racial terms in a case with an African–American defendant strikes at the heart of the fair trial protections. Only an impartial jury can ensure a fair trial. The importance of an impartial jury is particularly demonstrated by the facts in this case because the issue for trial was essentially identification. Credibility assessments are critical to resolving identification issues. Whether Watkins, an African–American, was guilty or not guilty of inflicting the blows on Rosenberger depended on the jurors' assessments of credibility.

Having determined that the derogatory racial remarks created a presumption of prejudice, we must now determine whether the state met its burden of showing beyond a reasonable doubt that the racial comments did not contribute to the verdict. *Cox*, 322 N.W.2d at 558, 559 (test also characterized as "no reasonable possibility that the extrinsic material could have affected the verdict," citing *Gibson v. Clanon*, 633 F.2d 851, 853–54 (9th Cir.1980), *cert. denied*, 450 U.S. 1035, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981)). In estimating the probable effect on a jury, we consider (1) the nature and source of the prejudicial matter, (2) the number of jurors exposed to its influence, (3) the weight of evidence properly before the jury, and (4) the likelihood that curative measures were effective in reducing the prejudice. *Id.* at 559.

Application of these factors to the facts of this case supports the defendant's request for a new trial. First, the prejudicial remarks were of a severe nature, classifying the defendant by his race and thereby invoking the prejudice associated with the term

and the historical use of the term. The remark originated with a bailiff, who is an officer of the court and in a position of authority to the jury. The demonstration of prejudice is significantly enhanced by the repeated use of the derogatory racial term to refer to Watkins during the jury's deliberation.

Second, a significant number of jurors admitted hearing the bailiff's remark, and a smaller number admitted that the term was used in deliberations. We compare this to *Parker* in which a bailiff's statement was held to be presumptively prejudicial even though ten members of the jury testified that they did not hear the comment. 385 U.S. at 365, 87 S.Ct. at 470.

Third, the evidence properly before the jury did not weigh heavily against the defendant. The eyewitnesses' testimony that Watkins inflicted the blows was substantially compromised by impeachment evidence. The evidence before the jury may have been sufficient to support a verdict of guilty absent injection of racial prejudice. But it is significant that the issue was essentially one of identification, heavily dependent on juror assessment of credibility.

Fourth, there is no likelihood of effective curative measures because the evidence of possible prejudice came to the district court's attention only after the trial was concluded. There was no opportunity to attempt to ameliorate or address the effects of the open use of prejudicial racial terms. Neither was there a remedial effect in the initial voir dire. The defense attorney's questioning on racial bias was subject to objection which the district court sustained. *See United States v. Bear Runner*, 502 F.2d 908, 912 (8th Cir. 1974) (when facts surrounding the case suggest the possibility of racial bias, general questions to the venire may be insufficient).

The presumption of prejudice that attached was not rebutted by the state. We reverse and remand for a new trial.

**Reversed and remanded for new trial.**