2001 SD 80

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**John Wesley JOHNSON, Defendant and Appellant.**

No. 21584.

Supreme Court of South Dakota.

Considered on Briefs March 19, 2001.

June 20, 2001.

Mark Barnett, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, SD, Attorneys for plaintiff and appellee.

Daniel L. Fox, Yankton, SD, Attorney for defendant and appellant.

PER CURIAM.

[¶ 1.] John Wesley Johnson appeals his conviction for third degree rape. Based

on juror misconduct, we reverse and remand for a new trial.

## FACTS

[¶ 2.] At the time of these events, Johnson was forty-three years of age and the victim was fifteen. On January 31, 1999, a guest at a Super Bowl party the two were attending allegedly caught Johnson in a bedroom having sex with the victim. The victim subsequently reported the incident to the authorities and an investigation followed. As a result, Johnson was charged with one count of third degree rape.[1] The victim testified at Johnson's jury trial that she had sexual intercourse with Johnson at the party. Johnson's defense was to deny the sex act and to question the credibility of the witnesses who testified against him. At the conclusion of the trial, the jury returned a verdict finding Johnson guilty as charged.

[¶ 3.] On the day of the trial, voir dire began at approximately 9:15 a.m. After voir dire, counsel began exercising their peremptory challenges. At that time, the trial court informed the prospective jurors that peremptory challenges would take awhile and that they could stand up and move around if they wished. Counsels' exercise of peremptory challenges continued until a jury of twelve was seated. The jury was then placed under oath and a recess was taken until approximately 11:15 a.m. Before the recess, the trial court carefully admonished the jurors not to talk about the case or to express any opinion on its merits.

[¶ 4.] The trial resumed with the trial court's reading of preliminary instructions and continued with testimony presented by the State. Another recess was taken at approximately 12:05 p.m. Again, the trial court admonished the jurors not to express any opinion about the merits of the case during the recess. The trial reconvened at 1:00 p.m. outside the presence of the jury. At that time, defense counsel raised the following issue with the trial court:

> MR. WILLIAM KLIMISCH: Yes, Your Honor. As we've been visiting that it was brought to the attention of the State's Attorney that while we were apparently selecting the ten people we were using our peremptory challenges on, that there were comments made by two of the jurors, one was, we believe Mike Horlyk and the other was Mr. Rempp, and we believe that one of the comments was, "I got a rope" and the other juror said something, "I have a tree". And we don't know if that was made in jest or if it was serious or they were keeping an open mind. And it would be our suggestion to the court that we ask Mr. Rempp to come in and that we ask him about it.

[¶ 5.] After this request, the trial court had juror Rempp brought into chambers for

---

1. Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:

    * * *

    (5) If the victim is ten years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim[.]

    * * *

    ... A violation of subdivision (5) ... is rape in the third degree, which is a Class 3 felony.
    SDCL 22–22–1(5).

questioning about his alleged comments.[2] The following exchange then took place:

THE COURT: Mr. Rempp, there have been some allegations made to the attorneys that they asked me to inquire into about some, what they felt were, inappropriate comments that were made during one of the recesses this morning allegedly involving you and talking about some comments and whether they were jokes or whether they were intended as—

MR. REMPP: No. They were just—nothing was intended. It was just jokes. That's all it was.

THE COURT: Okay. So the comments were made that—

MR. ROBERT KLIMISCH [co-defense counsel]: Yah.

MR. REMPP: Yah. Not trying to influence anybody, just, you know, just—I just took it as, you know, jokes or conversation or, whatever.

THE COURT: And the other juror that was involved was who that made the comments to you?

MR. REMPP: Oh, I'm trying to think of his name.

MR. CHAVIS [the prosecutor]: Mike Horlyk, they told me.

MR. REMPP: Mike Horlyk, yah. The name escaped me. I just know him. He stops out to the truck stop a lot so that's how I know Mike. We just know him personally. Don't happen to really done any dealings with him. We just visit. We've golfed a little bit together. Or not together, but met him on the golf course a little bit, so . . .

THE COURT: So in [your] view do you still have a clear and open mind and can make a decision based on the evidence?

MR. REMPP: Sure. I'll certainly do my civil duty here.

THE COURT: Mr. Chavis, any questions you want to ask here?

MR. CHAVIS: No. Mr. Rempp, it's just the defendant is presumed innocent and entitled to a fair trial and that's why Bill went into it with you. If there's any biases or prejudices we need to visit about that. But you're indicating it was just small talk, chitchat back and forth?

MR. REMPP: Yup.

THE COURT: You don't harbor any biases against the Black?[3] (footnote added).

MR. REMPP: No. In fact, when I was in the service my bunk buddy was a black man. So—from Indianapolis. So, real good friend.

MR. CHAVIS: That's all I have.

THE COURT: Do you have any questions?

MR. WILLIAM KLIMISCH: I do not. We're comfortable.

THE COURT: Okay. Thank you.

[¶ 6.] After this exchange, the trial court granted defense counsel and Johnson an opportunity to visit in private. On their return, counsel advised the trial court that Johnson wanted him to move for a mistrial because of the juror's comments. Denying the motion, the trial court made the following remarks:

THE COURT: Okay. You know, while certainly the comments made by Mr. Rempp were unfortunate, upon questioning and afforded a full opportunity for all counsel to question him, he represents that it was merely a joke, if albeit an inappropriate joke, and he's in no way biased or prejudiced and that those comments that were made would not in

---

2. Unlike Mr. Rempp, potential juror Horlyk was not actually seated as part of the jury.

3. Johnson is of African–American heritage.

any way carry over to his decisions in this case, and I have no evidence in front of me to the contrary at this point, so the request for a mistrial will be denied.

After its ruling, the trial court afforded Johnson the opportunity to exclude juror Rempp and to proceed with an eleven person jury trial. Johnson and defense counsel discussed the possibility, but ultimately advised the trial court that Johnson would rely on his mistrial motion. The trial court then made the following additional remarks:

> THE COURT: My ruling remains the same. I felt that the showing made here with the full opportunity for everybody to examine is not enough to show that, in fact, he does have a state of mind evidencing bias and prejudice that would render him unfair in this case. And in the absence of more of a showing than has been made to me, i.e., more of a showing that there's some actual bias there as opposed to, as I indicated, an inappropriate joke, I'm not going to grant the motion for mistrial.

Counsel and the trial court then visited about the possibility of a jury instruction on racial bias, but left the matter unresolved at that time.

[¶ 7.] After these events, the trial proceeded with the entry of a stipulation regarding the ages of Johnson and the victim. The State then rested and the defense went forward with Johnson testifying on his own behalf. After the defense rested, the trial court and counsel retired to the court's chambers where defense counsel moved for a judgment of acquittal and renewed the motion for a mistrial on the basis of juror prejudice. The trial court denied both motions and proceeded to settle jury instructions including an instruction that racial prejudice was something the jury should not take into consideration in deciding the case. After the instructions were given and closing arguments, the jury deliberated and then returned its guilty verdict. Johnson appeals.

## ISSUE

[¶ 8.] **Did the trial court abuse its discretion in denying Johnson a mistrial due to juror prejudice?**

[¶ 9.] Johnson argues the trial court abused its discretion in denying him a mistrial due to the bias and prejudice of juror Rempp. "The denial of a motion for mistrial will not be overturned unless there is an abuse of discretion. Motions for mistrial are within the discretion of the trial judge and will not be granted unless there is a showing of actual prejudice to the defendant." *State v. Alidani*, 2000 SD 52, ¶ 9, 609 N.W.2d 152, 155.

[¶ 10.] With regard to issues of juror misconduct, this Court has held that, "[e]ven if juror misconduct occurs and warrants an inquiry, not every irregular conduct of a jury is prejudicial and warrants a new trial. When juror misconduct occurs, a rebuttable presumption of prejudice arises." *State v. Wilkins*, 536 N.W.2d 97, 99 (S.D.1995) (citations omitted).

[¶ 11.] The Ohio Court of Appeals applied similar principles in considering a jury misconduct issue in *State v. Rudge*, 89 Ohio App.3d 429, 624 N.E.2d 1069 (Ohio Ct.App.1993). The defendant in *Rudge* was charged with two counts of aggravated murder. Prior to opening statements at the guilt phase of his trial, one of the alternate jurors heard another juror make the statement that, " 'We could save a lot of time and money and just hang him now.' " *Rudge*, 624 N.E.2d at 1070. The trial continued and guilty verdicts were returned on all counts. Prior to the penalty phase of the trial, the alternate juror informed the bailiff of the other juror's

"hang him now" statement. The bailiff relayed the matter to the trial court and the trial court conducted in camera examinations of the alternate juror and all of the other remaining jurors. Although the juror identified as having made the improper statement denied making it, the trial court found the statement prejudiced the defendant and granted the defendant's motion for a mistrial and new trial predicated upon jury misconduct. In reviewing the propriety of the mistrial on appeal, the Ohio Court of Appeals held:

A review of the transcript of the in-camera examination confirms that two of the jurors specifically testified that they had heard the statement in question. Although the first of these jurors stated that she was uncertain as to the identity of the person who had made the statement, the second juror was able to identify the person. Although the person identified as having made the statement denied having done so, when the second juror was questioned about this a second time, he continued to state that he "believed" he knew the identity of the person. Thus, the record before this court contains some evidence supporting the trial court's factual finding.

As a result, this court concludes that the trial court did not abuse its discretion in declaring a mistrial. *The statement clearly evidences a juror who was not impartial, and instead predisposed to a guilty verdict* and a death penalty.

*Rudge*, 624 N.E.2d at 1076 (emphasis added), *overruled on other grounds by State v. Reiner*, 89 Ohio St.3d 342, 731 N.E.2d 662, 672 (2000).

■ [¶ 12.] We echo the conclusion of the Ohio court with regard to Juror Rempp's "I've got a rope" statement and

find its prejudicial impact was especially harsh in this case in view of Johnson's race and the nature of the charge against him, *i.e.,* the rape of a young Caucasian girl.[4] As explained by the Minnesota Court of Appeals in *State v. Watkins*, 526 N.W.2d 638, 641 (Minn.Ct.App.1995):

An appeal to racial prejudice impugns the concept of equal protection, because the purpose and spirit of the Fourteenth Amendment "requires that prosecutions in state courts be free of racially prejudicial slurs." [*Miller v. North Carolina*, 583 F.2d 701, 707 (4th Cir.1978) ] (reviewing effect of prosecutor's racial comments, including repeated references to defendants as "these black men," in a prosecution for rape of white woman)(quoting [*United States ex rel. Haynes v. McKendrick*, 481 F.2d 152, 159 (2d Cir.1973) ]).

When racial considerations are injected into jury deliberations, the Sixth Amendment guarantee of a fair trial is defeated. *Tobias v. Smith*, 468 F.Supp. 1287, 1289–90 (W.D.N.Y.1979)(analyzing whether jury foreman's disparaging racial comments prejudiced jury deliberations). Demeaning references to racial groups invite jurors to view a defendant as coming from a different community than themselves and denies the defendant due process rights to a fair trial. *Haynes*, 481 F.2d at 152.

Court officials' and jurors' use of derogatory racial terms in a case with an African–American defendant strikes at the heart of the fair trial protections. Only an impartial jury can ensure a fair trial. The importance of an impartial jury is particularly demonstrated by the facts in this case because the issue for

---

4. In fact, the racial overtones in the statement were implicitly recognized by the trial court when it found a specific jury instruction on racial bias in jury deliberations was necessary as a partial response to the statement.

trial was essentially identification. Credibility assessments are critical to resolving identification issues. Whether Watkins, an African–American, was guilty or not guilty of inflicting the blows on Rosenberger depended on the jurors' assessments of credibility.

The Minnesota court went on to hold in *Watkins* that the derogatory racial remarks created a presumption of prejudice that the state failed to rebut with a sufficient showing that the racial comments did not contribute to the verdict. Accordingly, the court reversed the trial court's denial of the defendant's motion for a new trial.

[¶ 13.] Similarly, in this instance, credibility assessments were critical to Johnson's defense and the determination of whether or not he was guilty of raping the victim largely depended on the jurors' assessments of his credibility and the credibility of other witnesses. Thus, we likewise hold that juror Rempp's derogatory racial remarks created a presumption of prejudice to Johnson. We must now resolve whether the State successfully rebutted this presumption. *See Watkins, supra; Wilkins, supra.*

■ [¶ 14.] The State may rebut a presumption of prejudice resulting from juror misconduct:

> [B]y showing the information was harmless in view of all the evidence of guilt; or by determining there was no significant possibility that the defendant was prejudiced; or by showing that the nature of the extra-record evidence could not have had or had a minimal effect upon the jury.

*Wilkins,* 536 N.W.2d at 99–100 (citations omitted) (quoting *Buchholz v. State,* 366 N.W.2d 834, 840 (S.D.1985)).

**5.** Further, the individual who was supposed to have walked in on the couple during the

[¶ 15.] Here, the State clearly failed to show that the juror's prejudicial remarks were harmless in view of the conflicting evidence of guilt. *See Wilkins, supra; Buchholz, supra.* The victim's testimony that she had sexual intercourse with Johnson was substantially impeached with her admission of a prior inconsistent statement.[5] Further, the State presented no physical evidence to support its claim that a sex act had occurred involving the purported victim and Johnson or even that a sex act had taken place. To paraphrase *Watkins,* 526 N.W.2d at 642, while the evidence before the jury may have been sufficient to support a verdict of guilty absent the juror's racially prejudicial remarks, it is significant that the issues at trial were exclusively dependent on juror assessments of credibility and, here, the victim's credibility was clearly in question.

■ [¶ 16.] We further hold that the State failed to establish that there was no significant possibility that Johnson was prejudiced by the juror's remarks. *See Wilkins, supra; Buchholz, supra.* We cannot fully evaluate this issue because there was no trial court inquiry and there were no findings on the number of jurors who may have heard the prejudicial remarks or been influenced by them. This is in contrast with *Watkins* where the reviewing court was specifically able to find:

> a significant number of jurors admitted hearing the bailiff's remark, and a smaller number admitted that the term was used in deliberations. We compare this to [*Parker v. Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966) ] in which a bailiff's statement was held to be presumptively prejudicial even though ten members of the jury testified

sex act did not testify at trial.

that they did not hear the comment. 385 U.S. at 365, 87 S.Ct. at 470. *Watkins,* 526 N.W.2d at 642. Moreover, even if none of the other jurors heard Rempp's remarks, "[i]f only one juror is unduly biased or prejudiced or improperly influenced, the criminal defendant is denied his Sixth Amendment right to an impartial panel." *Rudge,* 624 N.E.2d at 1076.

[¶ 17.] We hold that the State failed in its showing that the nature of the remark could not have had or had a minimal effect upon the jury. *See Wilkins, supra; Buchholz, supra.* We note that the jury deliberated for approximately only one hour. During that time it was to elect a foreperson, review the 25 instructions of the court and weigh the conflicting evidence. Although obviously not determinative, we note this timing hardly bolsters a claim by the State of reasoned deliberation by the jury based on the facts and legal instructions rather than the possibility of a short-cut based on other improper considerations such as race. Again, to paraphrase *Watkins, supra,* the prejudicial remarks were of a severe nature that indirectly classified Johnson by his race and invoked the prejudice associated with the historical treatment of African–American males who have allegedly committed sexual improprieties with young Caucasian girls. Moreover, the remarks originated with a juror who ultimately sat in judgment over Johnson. This demonstration of prejudice simply cannot be minimized. The Constitution is colorblind. *Plessy v. Ferguson,* 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896) (Harlan., J. dissenting).

[¶ 18.] Based upon the foregoing, we hold that the trial court abused its discretion in denying Johnson's motion for a mistrial.

[¶ 19.] Reversed and remanded for a new trial.

[¶ 20.] MILLER, Chief Justice, SABERS, AMUNDSON, KONENKAMP and GILBERTSON, Justices, participating.