STATE of Minnesota, Respondent,

v.

Kenneth Eric HANKE, Appellant.

No. A05–261.

Court of Appeals of Minnesota.

April 11, 2006.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN; and Katherine Johnson, Chisago County Attorney, Center City, MN, for respondent.

John M. Stuart, State Public Defender, Minneapolis, MN; and John J. Brogan, Special Assistant State Public Defender,

Dorsey & Whitney LLP, Minneapolis, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge, HUDSON, Judge, and COLLINS, Judge.*

## OPINION

KLAPHAKE, Judge.

Appellant Kenneth Eric Hanke was convicted of fifth-degree possession of cocaine in violation of Minn.Stat. § 152.025, subd. 2(1) (2002). He moved posttrial for a *Schwartz* hearing because of improper comments made by the bailiff in the presence of at least three jurors during trial. The district court found that the bailiff had commented on the pervasive methamphetamine problem in Chisago County and suggested that such offenders should be imprisoned. The court concluded that the comments were harmless. We reverse and remand for a new trial.

## FACTS

On the afternoon of January 6, 2003, Corporal R.S. Berg of the Chisago County Sheriff's Department drove past a blue Camero driven by Anthony Scholten. Berg recognized the car and knew that Scholten's driver's license had been revoked. As he pulled the car over on the shoulder of County Road 22 near Wyoming to initiate a traffic stop, Berg saw the passenger, appellant Kenneth Eric Hanke, make furtive movements in the car and then throw a plastic baggie and what looked like a drug bindle out of the passenger window. Berg called for backup. The stop of the vehicle and appellant's arrest were videotaped.

During questioning at the scene, Scholten admitted that he had obtained more than 350 pseudoephedrine pills, which are used to make methamphetamine; he was not arrested. Appellant refused to admit to any wrongdoing, but police retrieved the plastic baggie and an aluminum foil-encased drug bindle containing what was later revealed to be .2 grams of cocaine. In field tests, the plastic baggie tested positive for drug residue, but it was not sent to the Bureau of Criminal Apprehension for further testing. Appellant was charged with fifth-degree possession of cocaine under Minn.Stat. § 152.025, subd. 2(1).

During appellant's two-day trial, the jury viewed the arrest videotape because appellant moved for its admission, believing that it would reveal that he had thrown nothing out of the car window. The district court gave a *Spreigl* instruction to limit jury deliberations to only the charged offense. The jury deliberated more than eight hours before reaching a guilty verdict, at one point informing the court that they were deadlocked. The court individually polled the jurors about their votes.

In a juror exit questionnaire, one juror revealed that the bailiff had spoken with some jurors about there being a real methamphetamine problem in Chisago County and had suggested that the only way to stop the problem was to get the offenders off the streets. Based on these improper comments, appellant moved for and was granted a *Schwartz* hearing to allow the jurors to be examined by the court in the presence of counsel to determine whether they were influenced by the improper comments. *See Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960).

The court individually interviewed 11 of the 12 jurors at the *Schwartz* hearing. Three of the jurors stated that on two

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

occasions during their breaks, the bailiff had made comments substantially the same as those alleged by the juror in the exit questionnaire. The court found that "the bailiff's conversations were harmless, as [appellant] was not prejudiced by the improper bailiff conduct."

## ISSUE

Was appellant entitled to a new trial because of the improper comments made by the bailiff?

## ANALYSIS

The appellate court reviews a district court's decision whether to grant a new trial because of a court official's improper prejudicial remarks made in the presence of the jury under an abuse of discretion standard of review. *State v. Cox*, 322 N.W.2d 555, 560 (Minn.1982). The purpose of a *Schwartz* hearing is "to avoid harassment of jurors and to provide a record on appeal in cases where, after the jury renders the verdict, the losing party becomes aware of facts which indicate the possibility of jury misconduct." *Zimmerman v. Witte Transp. Co.*, 259 N.W.2d 260, 262 (Minn.1977).

A defendant in a criminal trial has the constitutional due process right to a fair trial and an impartial jury. *State v. Varner*, 643 N.W.2d 298, 304 (Minn.2002). Private communication about a case between a court official, such as a bailiff, and the jury is improper and "presumptively prejudicial." *State v. Erickson*, 610 N.W.2d 335, 338 (Minn.2000); *State v. Richards*, 552 N.W.2d 197, 210 (Minn.1996) (stating that court officials' "[p]rivate communications with a juror sitting on a criminal case about the pending matter are presumptively prejudicial"); *Cox*, 322 N.W.2d at 558 (bailiff's statements about merits of criminal case in presence of jury creates rebuttable presumption of preju-

dice). Extraneous material heard by jurors that may affect a case, even though that material does not go to the merits of a case, is considered prejudicial, especially if the material places a defendant's right to an impartial jury in jeopardy. *State v. Watkins*, 526 N.W.2d 638, 641 (Minn.App. 1995). "The presumption of prejudice to the defendant is not conclusive; rather, the government bears the heavy burden of establishing that the contact involving the juror was harmless." *Richards*, 552 N.W.2d at 210 (quotation omitted).

The supreme court has set forth a four-part test to weigh whether prejudicial communications between jurors and a court official merit a new trial. *Cox*, 322 N.W.2d at 559. In reviewing the jury verdict, the court may not scrutinize the jury's deliberations, which are protected under Minn. R. Evid. 606(b). *Id.* Instead, a court reviewing the outside influences on the jury must "estimate their probable effect on a hypothetical average jury" by considering "the nature and source of the prejudicial matter, the number of jurors exposed to the influence, the weight of evidence properly before the jury, and the likelihood that curative measures were effective in reducing the prejudice." *Id.*

The bailiff's comments here were presumptively prejudicial because they were privately made to the jurors and could have affected appellant's right to an impartial jury. We also conclude that, using the four *Cox* inquiry factors, the state did not overcome the presumption of prejudice and satisfy its burden of establishing that the contact was harmless.

The bailiff was an officer of the court whose personal opinions might have improperly influenced a jury because of his position of authority and his presumed experience. His comments were made to at least three of the jurors, and possibly

more, and they were made on two occasions. The comments pertained to methamphetamine, a drug that was implicated in this case, even though it was not the subject of the charged offense. Any possible jury confusion from the evidence in the arrest videotape, which contained references to both the charged cocaine offense and methamphetamine use, could have been exacerbated by the bailiff's comments. Further, the overall evidence in the case was circumstantial, and this was a "close" case, as suggested by the fact that the jury was deadlocked during deliberations. Finally, the court had no opportunity to take specific curative measures because it only became aware of the improper bailiff comments posttrial.

On these facts, we conclude that the state did not meet its heavy burden of establishing that the bailiff's contact with the jurors was harmless, and the district court abused its discretion in failing to order a new trial. *See Watkins*, 526 N.W.2d at 641–42 (bailiff's use of racial epithet and jurors' repeated use of epithet during deliberations entitled defendant of disparaged race to a new trial when remarks were severe, significant number of jurors heard remarks, evidence did not weigh heavily against defendant, and court had no opportunity to take measures to cure prejudice).

### DECISION

We reverse the district court's decision that the bailiff's improper comments were harmless and remand for a new trial.

**Reversed and remanded.**