**STATE of South Dakota, Plaintiff and Appellant,**

v.

**James Allen ALMOND, Defendant and Appellee.**

No. 18225.

Supreme Court of South Dakota.

Considered on Briefs Dec. 2, 1993.

Decided Jan. 26, 1994.

Mark Barnett, Atty. Gen., Craig M. Eichstadt, Deputy Atty. Gen., Pierre, for plaintiff and appellant.

David R. Gienapp and Chris S. Giles of Arneson, Issenhuth, Gienapp and Blair, Madison, for defendant and appellee.

WUEST, Justice.

This is an intermediate appeal from a circuit court's order suppressing evidence seized in a search of the defendant James Almond (Almond). We affirm.

## FACTS

On July 9, 1992, South Dakota State Trooper Michael Shafer (Shafer) stopped Almond for speeding in Beadle County. Shafer detained Almond in the patrol car for the period of time it took to complete the ticketing process, approximately fifteen minutes. Shafer issued Almond a citation for speeding and a warning ticket for no present proof of insurance. Shafer testified that during the ticketing process, Almond seemed very nervous. Shafer also noticed a bulge in Almond's front left pocket. When the ticketing process was completed, Almond left the patrol car and started to walk back to his motorcycle. About the same time, Shafer also exited the patrol car, and verbally confronted Almond near the front of the patrol car. Shafer began to question Almond about the contents of his pocket, and whether Almond used drugs or was transporting drugs. Almond replied that he did not use, nor was he transporting drugs, and that his pocket contained keys, and perhaps some other items such as a lighter, pocketknife and wrench. Almond testified that Shafer stated, "Good, then empty them on the hood" or words to that effect. Shafer testified that he asked Almond if he could see what was in the pocket and Almond replied, "Sure," and then began to empty his pocket. As Almond pulled his hand out of his pocket Shafer observed a plastic bag that he believed to contain marijuana as well as a pipe used to smoke marijuana. Shafer then placed Almond under arrest and read him his Miranda rights. Shafer transported Almond to jail where a complete search of Almond's person revealed a bag containing five bindles of cocaine. The State charged Almond with possession of the marijuana, cocaine and drug paraphernalia.[1] Almond moved to suppress all evidence, stating that it was seized without a search warrant and pursuant to an illegal search and seizure contrary to the Fourth Amendment of the U.S. Constitution and contrary to Article VI, Section 11 of the Constitution of the State of South Dakota. Hearing on the motion was held on December 2, 1992. The circuit court, after hearing testimony from both Shafer and Almond, issued its memorandum opinion, findings of fact, conclusions of law, and order suppressing all evidence arising out of the search of Almond. It is from this order that the State brings an intermediate appeal.

## STANDARD OF REVIEW

■ We have recently discussed consent to search and our standard of review in that regard:

> For consent to a search to be valid, the totality of the circumstances must indicate that it was voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854, 875 (1973); *State v. Woods*, 374 N.W.2d 92, 100 (S.D.1985). The presence or absence of consent to search is a question of fact. *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. at 2059, 36 L.Ed.2d at 875; *State v. Nemeti*, 472 N.W.2d 477, 478 (S.D.1991); [*State v.*] *Zachodni*, 466 N.W.2d [624] at 628. The state bears the burden of demonstrating consent. *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. at 2059, 36 L.Ed.2d at 875; *Woods*, 374 N.W.2d at 100.

> Our standard of review concerning consent to search is as follows: "Because the presence or absence of consent to search is a question of fact, the trial court's resolution of that question will be upheld unless our examination of the evidence, construed in a light most favorable to the trial court's findings, convinces us that the finding was clearly erroneous." *Nemeti*, 472 N.W.2d at 478.

*State v. Krebs*, 504 N.W.2d 580, 587 (S.D. 1993). *See also United States v. Barahona*, 990 F.2d 412, 417 (8th Cir.1993) ("We review the lower court's determination of whether a voluntary consent to search was given under the clearly erroneous standard."); *United States v. Washington*, 957 F.2d 559, 562 (8th Cir.1992) ("The [U.S.] Supreme Court has explicitly stated that the voluntariness of a person's consent to a search, which involves that person's subjective understanding, is a

---

1. Laboratory analysis of the items seized showed that the bag contained 0.02 ounces of marijuana; the pipe contained residue of burned marijuana; and the five bindles of cocaine totalled 4.98 grams in weight.

question of fact to be reviewed under the clearly erroneous standard."). "A finding is 'clearly erroneous' when after reviewing all of the evidence, we are left with a definite and firm conviction that a mistake was made." *Selle v. Pierce*, 494 N.W.2d 634, 636 (S.D.1993) (citations omitted). The burden is on the State to "establish voluntariness by clear and convincing evidence that the search was the result of free, intelligent, unequivocal and specific consent without any duress or coercion, actual or implied." *Nemeti*, 472 N.W.2d at 478 (citing *State v. Cody*, 293 N.W.2d 440, 450 (S.D.1980)).

■ Applying the law to the facts is a question of law whereby we apply the abuse of discretion standard. " '[A]n abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.' " *State v. Lodermeier*, 481 N.W.2d 614, 621 (S.D.1992) (quoting *State v. Pfaff*, 456 N.W.2d 558, 560–61 (S.D.1990); *State v. Bartlett*, 411 N.W.2d 411, 414 (S.D.1987)). Discussing the meaning of an abuse of discretion standard, we have stated that, " 'Under the abuse of discretion standard, we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision.' " *Id.* (citing *Pfaff*, 456 N.W.2d at 560–61; *Bartlett*, 411 N.W.2d at 414; *Peterson v. Peterson*, 434 N.W.2d 732 (S.D. 1989)). *See also State v. Sickler*, 488 N.W.2d 70, 72 (S.D.1992); *State v. Smith*, 477 N.W.2d 27, 31 (S.D.1991).

■ Thus, we review the lower court's factual determination of whether Almond voluntarily consented to a search under a clearly erroneous standard. The lower court's legal decision on suppression of the evidence is reviewed under an abuse of discretion standard.

## DISCUSSION

In its findings of fact, the circuit court stated in part:

VIII. [Almond] was not told by [Shafer] that he was free to leave or that he could refuse to empty his pockets.

\* \* \* \* \* \*

X. Under the circumstances of the case, the observation of the witnesses, and the testimony of the witnesses, a reasonable person in [Almond's] situation would have thought he was once again being restrained and was in custody to the extent that a reasonable person in like circumstances would have assumed his freedom was curtailed.

XI. At the time of the second stop outside the patrolman's car, there was no reasonable suspicion nor was there probable cause for the search.

The trial court's conclusions of law stated in part:

III. That when [Almond] was detained by the law enforcement officer under all the circumstances he was being illegally detained in that a reasonable person in a like situation would have thought he was once again being restrained and was in custody to the extent that a reasonable person in like circumstances would have assumed his freedom was curtailed.

IV. Because [Almond] was being illegally detained when he allegedly consented to the search of his pockets, that consent was tainted by the illegality and was ineffective to justify the search.

The State contends that the trial court erred in these findings and conclusions because there is "no evidence to show any detention, legal or illegal." We disagree.

■ The U.S. Supreme Court has discussed what is required to find the existence of an arrest or detention:

An arrest requires *either* physical force ... *or*, where that is absent, *submission* to the assertion of authority.... "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."

*California v. Hodari D.*, 499 U.S. 621, 627–28, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690, 697–98 (1991) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). Thus, a seizure may be effected through a "show of authority." *Id.*, 499 U.S. at 628, 111 S.Ct. at

1551, 113 L.Ed.2d at 698. The test for the existence of a show of authority is an objective one, asking whether the officer's words and actions would have conveyed to a reasonable person that he was being ordered to restrict his movement. *Id.* In other words, the question is whether the individual would have concluded that he was "free to disregard the police and go about his business." *Id.* Additionally, the Supreme Court has stated that:

> [E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage—*as long as the police do not convey a message that compliance with their requests is required.*

*Florida v. Bostick,* 501 U.S. 429, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398–99 (1991) (citations omitted) (emphasis added).

█ In the present case, the court heard testimony that Almond was first detained in the state patrol vehicle for approximately fifteen minutes while he was ticketed for speeding. At the end of the ticketing process, Almond exited the vehicle and started to return to his motorcycle. Trooper Shafer, almost immediately thereafter, also exited the patrol car and started to question Almond about the contents of his pockets, and about whether Almond was transporting or using drugs. The court heard the following testimony from Trooper Shafer:

Q: Did you inform [Almond] that he was free to leave?

A: No, sir. I did not.

Q: Did you in any way inform him that he didn't have to answer any of your questions?

A: No, I did not.

Q: Did you in any way inform him that he did not have to tell you about the contents of his pockets or empty out the contents of his pocket?

A: No, sir. I did not do that.

We agree with the findings of the trial court that Almond would not have felt free to disregard Trooper Shafer, get on his motorcycle and drive away. Rather, the circumstances of the second stop, immediately followed by the patrol car detention, in combination with Shafer's words and actions could have conveyed to a reasonable person that his freedom to leave was restricted. Further, the court could have found from the testimony that Shafer conveyed a message to Almond that compliance with Shafer's requests was required.

█ The Fourth Amendment to the U.S. Constitution states:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. *See also* S.D. CONST., art. VI, § 11. The Supreme Court has reaffirmed the basic rule of Fourth Amendment jurisprudence, stating:

> "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' *Katz v. United States,* 389 U.S. 347, 357 [88 S.Ct. 507, 514, 19 L.Ed.2d 576] (footnotes omitted)."

*United States v. Ross,* 456 U.S. 798, 824–25, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572, 594 (1982). One specifically established exception is a search incident to a valid stop of a vehicle based on probable cause.[2] *State v. Pfaff,* 456 N.W.2d 558, 561 (S.D.1990) (citing *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *State v. Peterson,* 407 N.W.2d 221 (S.D.1987). The other exception is a search based on consent. *State v. Zachodni,* 466 N.W.2d 624, 628 (S.D. 1991); *Schneckloth,* 412 U.S. at 219, 93 S.Ct. at 2043–2044, 36 L.Ed.2d at 858.

---

2. In its brief, the State concedes that after the ticketing process was completed, "Trooper Shafer had no probable cause or reasonable suspicion to stop [Almond] again."

We have already noted our agreement with the trial court that Almond was, in essence, under arrest and subject to an illegal detention. The search to which Almond was subjected was without a warrant, not based on any probable cause or reasonable suspicion, and did not fall into the vehicle search exception. Nevertheless, the State argues that Almond consented to the search; thus, the search was valid and the items seized in that search should not be suppressed. The Supreme Court has held, however, that when an individual is under an illegal detention at the time when any (alleged) consent to search is given, that consent is "tainted by the illegality and [is] ineffective to justify the search." *Florida v. Royer*, 460 U.S. 491, 507–508, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229, 243 (1983).

In this case, the trial court judged the credibility of the witnesses. "It was in the position to observe the witnesses testifying, and we give due regard to its superior position to judge credibility." *Pfaff*, 456 N.W.2d at 561 (citing Langerman v. Langerman, 336 N.W.2d 669 (S.D.1983)). Our review of the record convinces us that the state has failed in its burden to establish by clear and convincing evidence that "the search was the result of free, intelligent, unequivocal and specific consent without any duress or coercion, actual or implied." *Nemeti*, 472 N.W.2d at 478. Reviewing the factual determination of the trial court under the clearly erroneous standard, we cannot find that a mistake has been made. Nor is any abuse of discretion found in the trial court's legal decision to suppress the evidence resulting from the illegal search of Almond.

The judgment is affirmed.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.