STATE of South Dakota, Plaintiff
and Appellant,

v.

Lenny WILKINS, Defendant
and Appellee.

No. 18677.

Supreme Court of South Dakota.

Argued March 20, 1995.

Decided Aug. 23, 1995.

Jay Miller, Chief Deputy States Atty., Rapid City, for plaintiff and appellant.

Dave Huss, Office of Public Defender, Rapid City, for defendant and appellee.

SEVERSON, Circuit Judge.

This is an appeal from an order granting a new trial. We affirm.

## FACTS

On January 28 and 29, 1993, a jury trial was held in which the state charged Lenny Wilkins with alternative counts of first degree rape and sexual contact with a child under sixteen years. After the jury had reached a verdict, but prior to the verdict being announced, the foreperson of the jury advised Trial Judge Roland Grosshans that he checked out from the library, read, took into the jury room and used suggestions from the book entitled *What You Need to Know for Jury Duty*. Judge Grosshans notified the parties that there was a problem and thereafter received the jury's verdict of guilty to the first degree rape charge. · After the jury was excused Judge Grosshans advised the parties of the specifics of the fore-

person's actions. Wilkins moved for a mistrial and requested a new trial.

Judge Grosshans subsequently ordered and presided over an evidentiary hearing in which the state granted the jurors immunity from prosecution under SDCL 22–11–17, the statute which makes it a Class 1 Misdemeanor for a juror to knowingly receive "any book" or relevant information.[1] Eleven of the twelve jurors testified at this hearing; the twelfth juror was unavailable.

In response to questioning at the hearing, the foreperson testified he scanned the entire book but stated he focused on and used the concepts regarding jury organization. He admitted bringing the book into the jury room and telling the jurors about the book and the procedures it suggested a jury follow. He also testified that the book was used to enhance or supplement the jury instructions. In addition, he stated he believed that had the book not been used the jury would have been hung or would have had to deliberate at least another four hours. He further testified he cut jurors off when they were discussing a topic.

Regarding the other jurors' answers to the investigation at the hearing, it was revealed that no one besides the foreperson read the book or recalled the book being opened in the jury's presence. In addition, the testimony demonstrated the jurors generally believed the book was used only to organize them and that it neither affected their deliberations nor influenced their verdict. In addition, the consensus of the testimony was that all jurors were allowed to express views and concerns. One juror, however, testified she felt pressure to suppress views or topics which she wanted to express or discuss and felt pressure due to time constraints. Another juror stated a hung jury might have existed had the book not been used.

At the conclusion of the hearing Judge Grosshans found that based upon the totality of the circumstances and evidence presented, the foreperson's conduct had a harmful effect

---

1. SDCL 22–11–17 provides:

   Any juror, or person drawn or summoned as a juror, or judicial officer, who knowingly permits any communication to be made to him or receives any book, paper, instrument or information relative to any cause pending before him, except according to the regular course of proceeding upon the trial of such cause, is guilty of a Class 1 misdemeanor.

upon the rest of the jury panel and had prejudiced the defendant's right to a fair and impartial jury trial. Judge Grosshans then held the foreperson's actions of bringing the book into the jury room resulted in juror misconduct which the state could not show was a harmless effect to rebut the presumption of prejudice. Judge Grosshans granted Wilkins a new trial pursuant to SDCL 23A–29–1 and 15–6–59.

## STANDARD OF REVIEW

When reviewing a trial court's factual determination regarding juror misconduct, the standard to be invoked is the clearly erroneous standard. *Shamburger v. Behrens,* 418 N.W.2d 299, 303 (S.D.1988). "A finding is 'clearly erroneous' when after reviewing all of the evidence, we are left with a definite and firm conviction that a mistake was made." *State v. Almond,* 511 N.W.2d 572, 574 (S.D.1994) (citing *Selle v. Pierce,* 494 N.W.2d 634, 636 (S.D.1993)). We will uphold the trial court's resolution of the facts unless, upon our viewing of the evidence in a light most favorable to the trial court's finding, we are convinced the finding was clearly erroneous under this definition. *Id.*

The lower court's legal decision as applied to the facts is reviewed under the abuse of discretion standard. *Id; Shamburger,* 418 N.W.2d at 303. " '[A]n abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.' " *Almond,* 511 N.W.2d at 572 (quoting *State v. Lodermeier,* 481 N.W.2d 614, 621 (S.D.1992); *State v. Pfaff,* 456 N.W.2d 558, 560–61 (S.D.1990); *State v. Bartlett,* 411 N.W.2d 411, 414 (S.D. 1987)). In applying the abuse of discretion standard, "we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and

the facts, could have reached a similar decision." *Id.* (citing *Pfaff,* 456 N.W.2d at 560–61; *Bartlett,* 411 N.W.2d at 414; *Peterson v. Peterson,* 434 N.W.2d 732 (S.D.1989)).

## DECISION

Members of a jury may be asked only limited questions as to the validity of a verdict.[2] In interpreting this statute this court had held that while jurors may testify as to the existence of extraneous prejudicial information, they may not testify as to intrinsic information such as (1) the effect such extraneous information had upon their minds; (2) statements or discussions which took place during deliberations; or (3) evidence of "intimidation or harassment of one juror by another, or other intra-jury influences." *Buchholz v. State,* 366 N.W.2d 834, 838 (S.D. 1985).

Examples of extrinsic information include media publicity, conversations between jurors and non-jurors, and evidence not admitted by the court. *Id.* The occurrence of a juror bringing a book into jury deliberations is an example of extraneous information. *See State v. McCoil,* 63 S.D. 649, 263 N.W. 157, 158 (1935); *State v. Holt,* 79 S.D. 50, 107 N.W.2d 732, 733 (1961).

Even if juror misconduct occurs and warrants an inquiry, not every irregular conduct of a jury is prejudicial and warrants a new trial. *McCoil,* 263 N.W. at 158; *Holt,* 107 N.W.2d at 733. When juror misconduct occurs, a rebuttable presumption of prejudice arises. *See Buchholz,* 366 N.W.2d at 840; *State v. Brown,* 84 S.D. 201, 169 N.W.2d 239, 242 (1969); *McCoil,* 263 N.W. at 158. The state may rebut this presumption:

[B]y showing the information was harmless in view of all the evidence of guilt, *Sher v.*

2. The statute which permits and limits inquiry into jury deliberations provides:
   Except as otherwise provided by statute, upon an inquiry into the validity of a verdict or indictment, a jury may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection

therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
   SDCL 19–14–7 (1987).

*Stoughton,* 666 F.2d 791, 793 (2d Cir.1981); or by determining there was no significant possibility that the defendant was prejudiced, *United States v. McKinney,* 429 F.2d 1019 (5th Cir.1970), cert. denied, 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971); or by showing that the nature of the extra-record evidence could not have had or had a minimal effect upon the jury, *United States ex rel. Owen v. McMann, supra* [435 F.2d 813 (2nd Cir.1970)].

*Buchholz,* 366 N.W.2d at 840. When evaluating this third area, the trial judge must invoke an objective standard, that of ascertaining "the likelihood that the influence would have upon a typical juror." *Id.* (citing *United States v. Greer,* 620 F.2d 1383, 1385 (10th Cir.1980)). This standard precludes a court from investigating the subjective effect of extrinsic material upon a juror. *U.S. v. Bagnariol,* 665 F.2d 877, 884–885 (9th Cir. 1981). Jurors may be questioned to determine that the extrinsic evidence had no effect upon them. *Port Terminal & Warehousing Co. v. John S. James Co.,* 92 F.R.D. 100, 109 (S.D.Ga.1981).

■ In applying the above prescriptions to the matter before the court it is apparent the trial judge committed no error in granting a new trial. While jurors should generally not be questioned regarding pressures felt from other jurors or the deliberation proceedings utilized, *see Shamburger, supra,* we cannot say the trial court's findings were clearly erroneous from the evidence obtained from proper questioning. The facts unveiled at the hearing demonstrated the book was read, brought into the jury room, and utilized by the foreperson to supplement the jury instructions. Additionally it was revealed that the jurors were aware that the procedures of the book were being followed. As this Court has stated:

> [T]he trial court is in the best position to evaluate the relevance of undisclosed evidence or later discovered facts and their impact on the outcome of the trial.

*Shamburger,* 418 N.W.2d at 302–303. We are not left with a firm or definite conviction that Judge Grosshans made a mistake in determining a typical, reasonable, or normal juror could have been influenced by the facts presented.

Further, we are not of the opinion that Judge Grosshans abused his discretion in applying the law to the facts. While we note that other courts have determined that a new trial was not warranted when it was discovered the jury utilized the same or similar book during their deliberations, *see United States v. De La Vega,* 913 F.2d 861 (11th Cir.1990), *United States v. Bassler,* 651 F.2d 600 (8th Cir.1981), under consideration of the law and the facts of this case, a decision to grant a new trial could be reached by a judicial mind.

■ A defendant is entitled to a jury which decides his case in a fair and impartial manner. *Buchholz,* 366 N.W.2d at 838. Jury deliberations are a critical stage of the trial; "a great degree of caution in insuring that nothing occurs which would taint the sanctity of this aspect of the American system of justice" must be required. *State v. Kaiser,* 504 N.W.2d 96, 100 (S.D.1993).

The judgment and order appealed from are affirmed.

MILLER, C.J., and AMUNDSON and SABERS, JJ., concur.

SEVERSON, Circuit Judge, for KONENKAMP, J., disqualified.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted did not participate.