1998 SD 55

Eric D. JONES, a/k/a Jerome Michael Jackson, Petitioner and Appellant,

v.

Joseph P. CLASS, Warden of the South Dakota Penitentiary, Appellee.

No. 20064.

Supreme Court of South Dakota.

Argued March 25, 1998.

Decided May 27, 1998.

Gregg S. Greenfield of Boyce, Murphy, McDowell and Greenfield, Sioux Falls, for petitioner and appellant.

Mark W. Barnett, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, for appellee.

GILBERTSON, Justice.

[¶ 1] Petitioner Eric Jones (Jones) appeals the denial of his application for writ of habeas corpus. We affirm.

### FACTS AND PROCEDURE

[¶ 2] On March 7, 1991, Connie Strozdas (Strozdas) was walking towards an entrance to the Empire Mall in Sioux Falls, South Dakota, when a man approached her and grabbed on to her purse. Strozdas resisted, a brief struggle ensued, and the man punched Strozdas in the face breaking her nose. Strozdas screamed for help. While on the ground she memorized the license plate number of the car the perpetrator and another man entered. A couple in the parking lot observed the struggle and gave a general description to the police.

[¶ 3] Two days later, on March 9, 1991, a Washington state patrolman radioed a communication concerning the license plate number on a speeding car. He was informed that the vehicle was stolen and activated his lights to get the driver to pull over. Rather than stop, the vehicle accelerated and led the police on a 70 mile chase reaching speeds of 120 m.p.h. The vehicle was finally stopped after it ran over a spike strip that the police had laid out. During the search of the vehicle, police found several items in the purse of Marin Bird Song, an occupant of the vehicle, including Strozdas' driver's license, checkbook, and social security card. The vehicle's three occupants, Jones, James Scott, a/k/a James Smith, and Bird Song were arrested for felony eluding and possession of stolen property. Strozdas subsequently identified Jones as her attacker in a photographic lineup. Jones and Scott were extradited to South Dakota and tried in the same proceeding. Both men were found guilty of first degree robbery and sentenced to twenty-five years in the penitentiary.

[¶ 4] Jones and Scott both appealed. This Court summarily affirmed Jones' conviction. SDCL 15–26A–87.1; *State v. Jones*, 498 N.W.2d 220 (S.D.1993). This Court affirmed Scott's, a/k/a Smith's, conviction on direct appeal. *State v. Smith* 494 N.W.2d 390 (S.D. 1992). We also denied Scott habeas relief. *Scott v. Class*, 532 N.W.2d 399 (S.D.1995). Jones appeals the denial of his writ of habeas corpus raising the following issues for our review:

1. Whether Jones was denied his due process rights and his right to confront witnesses in the admission of what he claims to be extremely prejudicial evidence.

2. Whether Jones was denied a fair trial due to alleged juror bias and juror misconduct.

3. Whether Jones was denied effective assistance of trial counsel.

4. Whether Jones was denied effective assistance of appellate counsel.

5. Whether Jones' constitutional right against self-incrimination was violated.

6. Whether the lack of transfer orders is a jurisdictional defect entitling Jones to habeas corpus relief.

7. Whether the trial court erred in denying Jones' motion to sever his trial from Scott's trial.

8. Whether Jones was denied a fair trial due to alleged judicial bias.

9. Whether Jones was denied his due process rights and right against cruel and unusual punishment due to the sentencing judge's unfamiliarity with the case.

10. Whether the cumulative effects of all of the alleged errors violated Jones' due process rights.

## STANDARD OF REVIEW

[¶ 5] Our standard of review for a habeas corpus appeal is well established. The habeas petitioner has the initial burden to prove by a preponderance of the evidence that he is entitled to relief. *Black v. Class*, 1997 SD 22, ¶ 5, 560 N.W.2d 544, 546 (citing *Johnson v. Zerbst*, 304 U.S. 458, 469, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461, 1469 (1938); *Loop v. Class*, 1996 SD 107, ¶ 14, 554 N.W.2d 189, 191; *Two Eagle v. Leapley*, 522 N.W.2d 765, 768 (S.D.1994)). The habeas court's findings are given "considerable deference" and we will not reverse these findings unless they are clearly erroneous. *Id.* (citations omitted).

Habeas corpus is not a substitute for direct review. Because habeas corpus is a collateral attack upon a final judgment, our scope of review is limited.... Habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.

*Lodermeier v. Class*, 1996 SD 134, ¶ 3, 555 N.W.2d 618, 621–22 (citing *Loop*, 1996 SD 107 at ¶ 11, 554 N.W.2d at 191).

## ANALYSIS AND DECISION

[¶ 6] **1. Whether Jones was denied his due process rights and his right to confront witnesses in what he claims to be the admission of extremely prejudicial evidence.**

[¶ 7] Jones claims that several items of evidence were improperly admitted

at trial and were unfairly prejudicial to him. Evidentiary rulings made by the trial court are presumed correct and are reviewed under an abuse of discretion standard. *State v. Goodroad,* 1997 SD 46, 563 N.W.2d 126.

> It is a rare evidentiary question that rises to the lofty heights of a constitutional violation. . . . The habeas petitioner must establish an error which demonstrates a violation of due process. This burden is much greater than that required on direct appeal and is even greater than the showing of plain error on direct appeal.

*Loop,* 1996 SD 107 at ¶ 23, 554 N.W.2d at 193 (citing *Mendoza v. Leapley,* 5 F.3d 341, 342 (8thCir.1993); *Hicks v. Scurr,* 671 F.2d 255, 259 (8thCir.1982), *cert. denied,* 459 U.S. 968, 103 S.Ct. 295, 74 L.Ed.2d 278 (1982)).

[¶ 8] Over objection by counsel, the trial court admitted testimony from a police officer that Jones had used up to seven different aliases. The habeas court concluded it was relevant to show a criminal pattern but even if it was error, Jones has failed to establish prejudice. To admit these aliases was error as they have no relevancy to the charge. However, we agree with the habeas court that this error was not prejudicial under our habeas standards.

[¶ 9] Jones contends the trial court erred by admitting testimony that a false social security card, bearing the name "Jerome M. Jackson," was found in his possession at the time of his arrest. Jones further argues the trial court also erred by admitting testimony that when arrested, police officers found several credit card receipts in the car, with charges made on other people's cards. However, Jones' counsel did not object at trial and in fact utilized this now challenged evidence in his strategy to show the state was prosecuting the wrong people.

[¶ 10] Moreover, Jones challenged this evidence on different grounds on direct appeal.[1] Jones argued on direct appeal the police officers who searched the vehicle did not have probable cause and therefore, the trial court erred by denying his motion to suppress all of the evidence obtained from the search.

> The inquiry is not 'whether the trial court erred in admitting the particular testimony,' but 'whether the admissions resulted in a trial so fundamentally unfair as to deny [the habeas applicant] due process of law. In making this determination we must review the totality of the facts in the case and analyze the fairness of the particular trial under consideration.' To justify the grant of habeas corpus, the error must be 'so "gross" . . . "conspicuously prejudicial" . . . or otherwise of such magnitude that it fatally infected the trial and failed to afford [the habeas applicant] the fundamental fairness which is the essence of due process.'

*Loop,* 1996 SD 107 at ¶ 23, 554 N.W.2d at 193 (citing *Rainer v. Dep't of Corrections,* 914 F.2d 1067, 1072 (8thCir.1990) (citations omitted), *cert. denied,* 498 U.S. 1099, 111 S.Ct. 993, 112 L.Ed.2d 1077 (1991)). We found no error in the admission of this evidence when we considered the matter on direct appeal and we find no error here.

[¶ 11] **2. Whether Jones was denied a fair trial due to juror bias and juror misconduct.**

[¶ 12] We utilize the clearly erroneous standard when reviewing a trial court's factual determination regarding juror misconduct. *State v. Wilkins,* 536 N.W.2d 97, 99 (S.D.1995) (citing *Shamburger v. Behrens,* 418 N.W.2d 299, 303 (S.D.1988)). "A finding is 'clearly erroneous' when after reviewing all of the evidence, we are left with a definite and firm conviction that a mistake was made." *State v. Almond,* 511 N.W.2d 572, 574 (S.D.1994) (citing *Selle v. Pierce,* 494 N.W.2d 634, 636 (S.D.1993)).

[¶ 13] The trial court's legal decision, as applied to the facts, is reviewed under the abuse of discretion standard. *Id; Shamburger,* 418 N.W.2d at 303. "[A]n abuse of discretion refers to a discretion exercised to

---

1. "The rule is when a petitioner takes a direct appeal, he cannot thereafter, in a post-conviction proceeding, raise any matter of which he was aware at the time of the direct appeal but did not raise." *Loop,* 1996 SD 107 at ¶ 24, 554 N.W.2d at 193 (citing *Miller v. State,* 338 N.W.2d 673, 675 (S.D.1983)).

an end or purpose not justified by, and clearly against reason and evidence." *Almond,* 511 N.W.2d at 572 (citations omitted). In applying the abuse of discretion standard, "we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision." *Id.* (citations omitted).

[¶ 14] Jones claims both juror bias and juror misconduct precluded him from receiving a fair trial. Jones alleges juror bias because one of the jurors failed to disclose, during voir dire, that her children went to school with the victim and that she had previously been a neighbor to the victim's fiancé. The juror informed the trial judge the next day who then met with the juror and attorneys. After the trial judge was convinced the juror could remain impartial, he allowed her to remain on the panel. *See State v. Volk,* 331 N.W.2d 67, 70 (S.D.1983) (noting trial court's broad discretion in rulings regarding alleged juror bias). Jones' counsel was apparently also satisfied, as he did not object at trial and has therefore waived review on this basis. *State v. Durfee,* 322 N.W.2d 778, 786 (Minn.1982); *State v. Adams,* 27 Ariz.App. 389, 555 P.2d 358, 360 (1976).

[¶ 15] The alleged misconduct stemmed from this same juror who watched a five to ten second television news report after the first day of trial, against the trial judge's specific admonishments, and observed Jones being escorted to the courthouse in handcuffs making a "lewd gesture" toward the television camera. Media publicity is an example of extrinsic evidence. *Wilkins,* 536 N.W.2d at 99. The juror informed the court of this the third day of trial. The juror was questioned at great length by defense counsel and the trial court. The trial court was satisfied the juror could remain impartial and therefore denied Jones' subsequent motions to remove this juror and for a mistrial. Jones alleges this was error claiming this misconduct resulted in the juror becoming biased against him.

[¶ 16] A defendant is entitled to a jury which decides his case in a fair and impartial manner. *Buchholz v. State,* 366 N.W.2d 834, 838 (S.D.1985). "Even if juror misconduct occurs and warrants an inquiry, not every irregular conduct of a jury is prejudicial and warrants a new trial." *Wilkins,* 536 N.W.2d at 99 (citing *State v. McCoil,* 63 S.D. 649, 651, 263 N.W. 157, 158 (1935)).

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable.... [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith v. Phillips,* 455 U.S. 209, 215–20, 102 S.Ct. 940, 944–47, 71 L.Ed.2d 78, 85–87 (1982) (petitioner alleging juror bias must prove actual bias to establish due process claim).

[¶ 17] The trial judge was repeatedly assured by the juror she was not influenced by what she had seen on television and could remain impartial. *Almond, supra; Shamburger, supra.* "[T]he trial court is in the best position to evaluate the relevance of undisclosed evidence or later discovered facts and their impact on the outcome of the trial." *Shamburger,* 418 N.W.2d at 302–303.[2] As such, we find no abuse of discretion in allowing juror to remain on the panel and not granting a mistrial.

[¶ 18] **3. Whether Jones was denied effective assistance of trial counsel.**

[¶ 19] We begin our analysis by noting that we presume Jones' trial counsel was competent and recognizing that Jones "carries a heavy burden in establishing ineffec-

---

2. In so holding we do not reach the issue of whether the so-called prejudice, when created by a voluntary act of the defendant, can be a basis for this type of claim. In this case he chose to make the lewd gesture towards a television camera knowing full well it would likely be broadcast to the public.

tive assistance of counsel." *Fast Horse v. Leapley*, 521 N.W.2d 102, 104 (S.D.1994) (citing *United States v. Valenzuela*, 521 F.2d 414 (8th Cir.1975), *cert. denied*, 424 U.S. 916, 96 S.Ct. 1117, 47 L.Ed.2d 321 (1976); *State v. Walker*, 287 N.W.2d 705, 706 (S.D.1980)). As such, "effective counsel is not always equated with successful counsel." *Id.* (citing *State v. McBride*, 296 N.W.2d 551, 554 (S.D.1980)). To hold otherwise would render any analysis irrelevant as an acquittal would establish attorney competency with no appeal by the vindicated defendant and a conviction would be synonymous with incompetence. Even the most vigorous and professional of defenses may fall before the weight of the ultimate facts of a case. We will not reverse the habeas court's findings unless they are clearly erroneous. *McCafferty v. Solem*, 449 N.W.2d 590, 592 (S.D.1989); *Satter v. Solem*, 422 N.W.2d 425 (S.D.1988).

[¶ 20] This Court follows the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), to determine whether a defendant received effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and Article VI, § 7 of the South Dakota Constitution. *Lien v. Class*, 1998 SD 7, ¶ 14, 574 N.W.2d 601, 604; *Luna v. Solem*, 411 N.W.2d 656, 658 (S.D.1987). Under this standard, the burden is on the petitioner to show 1) that counsel's performance was deficient, and 2) that petitioner was prejudiced by the deficient performance. *Id. Strickland, supra.* Addressing the first part of the *Strickland* test, deficient performance, we have stated that:

'When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.' *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. 'Judicial scrutiny of counsel's performance must be highly deferential.' *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. 'Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95 (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83, 93 (1955)).

*Two Eagle*, 522 N.W.2d at 768 (quoting *Primeaux v. Leapley*, 502 N.W.2d 265, 267 (S.D. 1993)).

[¶ 21] The second prong of the *Strickland* test concerns prejudice to the petitioner. Prejudice exists when there is a "reasonable probability that, but for counsel's unprofessional errors, the proceeding would have been different." *Fast Horse*, 521 N.W.2d at 104 (citing *Woods v. Solem*, 405 N.W.2d 59, 61 (S.D.1987) (relying on *Strickland, supra*)). It is not enough for the petitioner to show that the verdict would have been different; he must show "that the counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Hopfinger*, 511 N.W.2d at 847. Our analysis would be defective if we were to focus solely on "mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180, 189 (1993). To overturn a conviction or sentence "solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Id.* 506 U.S. at 369–70, 113 S.Ct. at 842–43, 122 L.Ed.2d at 189 (citation omitted).

[¶ 22] Based upon a thorough review of the record, we do not believe Jones was denied his right to effective assistance of counsel. Jones claims that his trial counsel's performance was unreasonable because he failed to limit alias testimony and opened the door to allow admission of the prejudicial evidence addressed under issue one. Concerning the alias testimony, the record reflects trial counsel did seek to limit its admission by objecting, which the trial court

overruled, and therefore preserved the issue for our review. Therefore, trial counsel was not ineffective in this respect. *State v. Loop,* 422 N.W.2d 420, 423 (S.D.1988).

[¶ 23] Jones argues that trial counsel was deficient by opening the door, upon cross-examination of the arresting officer, when he inquired about clothing and receipts found in the vehicle when it was stopped in Washington. However, this line of questioning was clearly relevant to establish Jones' main defense; that the State was prosecuting the wrong person. Here, we agree that "[t]rial tactics, not errors, are being argued" by Jones. *Olesen v. Lee,* 524 N.W.2d 616, 619 (S.D.1994) (citing *Jenner v. Leapley,* 521 N.W.2d 422, 430 (S.D.1994) (citation omitted)).

> "It is not our function to second guess the decisions of experienced trial attorneys regarding matters of trial tactics." *High Elk v. State,* 344 N.W.2d 497, 501 (S.D.1984) (citations omitted). "It is always easy to use hindsight to cast doubt on a lawyer's trial tactics, but a wrong or poorly advised exercise of judgment is not alone enough to support a subsequent claim of ineffective counsel." *Id.*

*Id.* "A difference of trial tactics does not amount to ineffective assistance of counsel." *Fast Horse,* 521 N.W.2d at 106 (quoting *People v. Nickson,* 120 Mich.App. 681, 327 N.W.2d 333, 335 (1982)).

### [¶ 24] 4. Whether Jones was denied effective assistance of appellate counsel.

[¶ 25] Constitutionally guaranteed representation must be "adequate and effective" at every critical stage of a criminal proceeding, including appeal and not merely "perfunctory and casual." *Loop v. Solem,* 398 N.W.2d 140, 141 (S.D.1986) (citing *Anderson v. State,* 373 N.W.2d 438 (S.D. 1985) *(overruled on other grounds )).* In reviewing the adequacy and effectiveness of representation, we must determine whether counsel exercised the "customary skills and diligence that a reasonably competent attorney would exercise under similar circumstances." *Id.* The same standards that are applied in measuring trial counsel's competence to determine alleged ineffectiveness ap-

ply in measuring appellate counsel's competence. *Lykken v. Class,* 1997 SD 29, ¶ 27, 561 N.W.2d 302, 309 (citations omitted).

[¶ 26] Jones contends he has been prejudiced because "had the issues of severance, prejudicial evidence, juror bias, judicial bias, unfamiliar sentencing judge, and a *Doyle* violation been raised on appeal, Jones would have prevailed on appeal[.]" We disagree.

[¶ 27] We find Jones' claim that severance was not effectively raised on appeal to be without merit. Although the issue was argued, Jones finds fault with what he considers a "skimpy" brief submitted by appellate counsel on direct appeal. This has no more to do with competence than assuming a "fat" brief equals legal brilliance rather than useless verbosity. Justice is not measured by the pound nor the ream. Appellate counsel should not be held ineffective per se for not utilizing the maximum number of pages allowable in briefs submitted to this Court.

> We begin with the observation that it is undeniably true that some appellate briefs are written better than others. Those briefs submitted by both appellant and appellee which are well researched, accurate, concise, clear and to the point are of true benefit to the court. Not all briefs rise to this level of excellence. However, a brief reaches the minimum level constitutionally acceptable if it sufficiently raises relevant issues for the court to consider and address.

*Nguyen v. State,* 844 P.2d 176, 178 (Okla. Crim.App. 1992). *See also Hooks v. State,* 902 P.2d 1120, 1125 (Okla.Crim.App. 1995), *cert. denied,* 517 U.S. 1145, 116 S.Ct. 1440, 134 L.Ed.2d 561 (1996) (holding efforts on appeal constitutionally sufficient if relevant issues are raised for the court to consider and address).

[¶ 28] Jones claims that he requested appellate counsel to raise the issues of juror bias, judicial bias, and the sentence imposed. Jones' appellate counsel was not required to raise every issue suggested by Jones. The Supreme Court in *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987, 993 (1983), has unequivocally stated that it has never suggest-

ed "that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." [3]

 [¶ 29] Concerning the remaining issues Jones urges should have been presented on appeal, appellate counsel testified that she decided only to go with the arguments she felt were strongest.[4] As the Supreme Court reaffirmed in *Burger v. Kemp,* 483 U.S. 776, 784, 107 S.Ct. 3114, 3121, 97 L.Ed.2d 638 (1987) and *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986), the "process of 'winnowing out weaker claims on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Id.* (citing *Jones,* 463 U.S. at 751–52, 103 S.Ct. at 3312–13, 77 L.Ed.2d 987 (holding appellate attorney's representation was vigorous and effective and did not constitute ineffective assistance by not raising every issue requested by defendant)).

[¶ 30] While appellate counsel's entire appellate performance may not have been perfect, we are mindful of the Supreme Court's admonishment, as made clear in *Strickland,* "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689, 104 S.Ct. at 2065. We hold that appellate counsel's challenged conduct falls within the "wide range of professionally competent assistance" required under the Sixth Amendment to the Federal Constitution. *Id.* 466 U.S. at 690, 104 S.Ct. at 2066.

### [¶ 31] 5. Whether Jones' constitutional right against self-incrimination was violated.

 [¶ 32] A Washington State Patrol detective was called by the State and asked to provide the circumstances surrounding the stop which brought him to that scene. The detective testified that he arrived on scene after the police officers informed him "it was a high speed pursuit, a stolen vehicle. There were three suspects in the car and no one wanted to talk" *prior to arrest.* The trial judge had previously granted Jones' motion in limine to prevent the use of Jones' *post-arrest* silence.

[¶ 33] Jones argues that his Due Process and Fifth Amendment rights were violated because the detective's testimony was presented at trial for non-impeachment purposes in violation of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, *Doyle* is not relevant to the facts before this Court, because the brief reference concerned Jones' pre-arrest silence. In *Doyle,* the Supreme Court found a Due Process violation in using a defendant's silence at the time of arrest and after receiving *Miranda* warnings for impeachment purposes. Therefore, the "fundamental unfairness [which served as the basis for the rule in *Doyle*] of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently of-

---

3. Justice Jackson, after observing appellate advocates for many years, stated:

 One of the first tests of a discriminating advocate is to select the question, or questions, that he will present orally. Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one.... [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one.

 *Id.* at 463 U.S. at 752, 103 S.Ct. at 3313, 77 L.Ed.2d at 994 (quoting Jackson, *Advocacy Before the Supreme Court,* 25 Temple L.Q. 115, 119 (1951)).

4. Appellate counsel testified that she reviewed the transcripts to determine which issues should be raised to present an effective appeal. Counsel explained not raising all of the issues Jones now claims should have been raised by stating:

 I know I've listened to Justice Sabers many times talk about raising the important ones [issues] and not throwing a lot of issues at them because then they're just—that they may think all of 'em are not urgent issues, I guess. So I do try and weed out the ones that I think we have a shot at[.]

fered at trial" is not implicated. *Wainwright v. Greenfield*, 474 U.S. 284, 291, 106 S.Ct. 634, 638, 88 L.Ed.2d 623, 630 (1986) (quoting *South Dakota v. Neville*, 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748, 760 (1983)). Jones did not testify at trial so the State was not permitted to utilize his silence as impeachment evidence.

[¶ 34] The Supreme Court has stated that the "Fifth Amendment ... forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). However, there is no evidence in the record that the State sought to bring out this forbidden subject, directly or by allusion, by the brief reference to Jones' pre-arrest silence through the detective. *State v. Wilson*, 297 N.W.2d 477, 482 (S.D.1980) (reversible error for prosecutor to call attention of the jury to the failure of defendant to testify). When asked to explain in general terms the circumstances prompting his arrival on the scene, the detective merely mentioned the three passengers were silent.

[¶ 35] We are convinced beyond a reasonable doubt the mention of Jones' pre-arrest silence did not contribute to the guilty verdict. *Id.* First, the testimony was not admitted. Defense counsel's objection to this testimony was sustained. The State did not bring Jones' silence to the attention of the jury again. Second, the jury was instructed that a defendant has a right not to speak with the police and therefore, the jury is not permitted to "draw any inference or conclusions" from Jones' pre-arrest silence. *State v. Winckler*, 260 N.W.2d 356, 367 (S.D.1977) (admonishing the jury not to consider unresponsive answer sufficient to correct error). Finally, the evidence upon which Jones was convicted was overwhelming.

[¶ 36] **6. Whether the lack of transfer orders is a jurisdictional defect entitling Jones to habeas corpus relief.**

[¶ 37] Jones claims two separate instances of error under this issue. The first challenge is leveled at the initial transfer from Judge Hurd, the judge assigned to hear motions, to Judge Srstka. When asked to set a trial date, Judge Hurd stated that he would like to "move this case to another judge, because [Jones and his co-defendant Scott are] in custody" with the idea that another judge could preside over the case sooner than could Judge Hurd. The trial was then assigned to Judge Srstka without a transfer order.

[¶ 38] Jones claims that failure to file a transfer order under SDCL 15–12–32 deprived Judge Srstka of jurisdiction and therefore his conviction is invalid. We do not agree. The prerequisite of a "formal order" under SDCL 15–12–32 was not necessary because the statute was never invoked by Jones to disqualify Judge Hurd. *Lodermeier v. Class*, 1996 SD 134, 555 N.W.2d 618. SDCL 15–12–32 provides:

> The presiding judge of the circuit court or in his absence or disqualification as the judge sought to be changed, the senior judge of the circuit shall review the affidavit and certification, if any, and it is determined that the affidavit is timely and that the right to file the affidavit has not been waived or is not otherwise legally defective, shall assign some other circuit judge or magistrate of that circuit as is appropriate to preside in such action, *by filing an order* of such appointment with the clerk of the court of the county wherein said action is pending. From the filing of such order the judge or magistrate therein designated shall have full power, authority and jurisdiction to proceed in the matter.

(emphasis added).

[¶ 39] Jones' second challenge concerns the lack of a transfer order from Judge Srstka back to Judge Hurd for sentencing. Prior to sentencing, Jones informally requested Judge Srstka to recuse himself. Judge Srstka voluntarily agreed and Judge Hurd took over the assignment. SDCL 15–12–21.1 governs informal requests seeking to change a judge by providing in part:

> Prior to filing an affidavit for change of judge, the party or his attorney shall informally request the judge or magistrate who, in the ordinary course, would preside at the hearing or trial, to disqualify himself.... If the judge or magistrate grants

the request, he shall forthwith notify the presiding judge, who shall assign the case to some other judge or magistrate[.]

[¶ 40] We find Jones' claim to be meritless under our holding in *Lodermeier, supra,* where a defendant made a similar informal request for the judge to disqualify himself. In *Lodermeier* we held that where the informal procedure of SDCL 15–12–21.1 is used, the affidavit procedure of SDCL 15–12–32 does not apply. 1996 SD 134 at ¶ 6, 555 N.W.2d at 622. "This method averts the technical niceties of removal by affidavit found in SDCL 15–12–32. Explicit language in SDCL 15–12–32 requires an order be filed before jurisdiction vests, whereas no such requirement is found in SDCL 15–12–21.1." *Id.*

[¶ 41] Under SDCL 16–6–11 original criminal jurisdiction vests with the circuit court of the Second Judicial Circuit Court not an individual circuit judge of that court. In accord is SDCL 15–12–20(3) which defines a "judge" as "a judge *of* the circuit court ...." (emphasis added). It is only in cases of disqualification of an individual circuit judge per the above statutes that there becomes jurisdictional pre-requisites to transfer cases between individual judges of a judicial circuit. Those statutes were not invoked here.

[¶ 42] We find Jones' additional arguments to be without merit and therefore affirm.

[¶ 43] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 44] SABERS, J., concurs in part and concurs in result in part.

SABERS, Justice (concurring in part, concurring in result in part).

[¶ 45] I concur in result on Issue 1, as Jones failed to show prejudice from the testimony regarding his use of aliases. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). Jones' remaining issues are meritless and I agree that the order denying habeas relief should be affirmed.