IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-63,079-02






EX PARTE WILLIAM BERKLEY, Applicant








ON APPLICATION FOR A POST-CONVICTION WRIT OF HABEAS CORPUS


AND STAY OF EXECUTION FROM CAUSE NO. 20000D5705-243-2 


IN THE 243RD JUDICIAL DISTRICT COURT


PASO COUNTY






 Cochran, J., filed a Concurring Statement in which Womack, J., joined.



 I agree that applicant has failed to satisfy the requirements of Article 11.071, § 5, but
not for the reasons asserted by the State. The State argues that applicant could have, and
therefore should have, included any constitutional claim concerning the scientific validity of
the Comparative Bullet Lead Analysis (CBLA) evidence in his original writ filed in
December of 2004. The State notes that the National Research Council (NRC) Report
expressing concerns about the scientific underpinnings of this expertise had been published
in February of 2004, some ten months before applicant filed his original writ. That report
was certainly sufficient notice that expert testimony concerning CBLA evidence might pose
significant problems if the expert stated or implied that a bullet retrieved from the crime
scene was "analytically indistinguishable" from a bullet retrieved from the defendant, and
therefore the crime-scene bullet probably or likely came from the defendant's batch of
bullets. (1) This would be sufficient notice to put a reasonable person on notice to challenge
the admissibility and use of CBLA evidence in pending or future cases. That is an
evidentiary claim. But the Report was not sufficient notice that the FBI itself had publicly
repudiated the future use of CBLA expert testimony and would send letters to prosecutors
whose offices had, in the past, used FBI CBLA expert witnesses to reexamine those cases. 
 It was the issuance of this press report on September 1, 2005, that would be sufficient notice
of a possible constitutional, rather than evidentiary, claim. Therefore, I do not think that
applicant's constitutional claim was "available" until September 1, 2005, which was after he
had filed his original writ. 

 However, I agree that applicant has not alleged a cognizable constitutional claim,
supported with sufficient factual allegations. Applicant makes passing mention of our
"actual innocence" jurisprudence and the Due Process Clause, but he has not alleged facts
that would support either a claim of actual innocence or any violation of the Due Process
Clause. He merely states that CBLA evidence was introduced at trial and therefore "he is
innocent." The improper introduction of CBLA evidence at applicant's trial does not, by
itself, lead to the conclusion that he is innocent or that his due process rights were violated. 
Only if his conviction for capital murder actually rested upon this evidence, or the jury must
necessarily have relied upon this evidence, would applicant have a constitutional claim. (2)

 In this case, applicant failed to set out the other inculpatory evidence admitted at his
trial. His capital murder conviction was supported by evidence that (1) his DNA was found
in the murder victim's vagina; (2) a video recording showed a man (later identified as
applicant) carjacking the victim and her car from a drive-through ATM; (3) his two written
confessions to the robbery, kidnapping, and murder of the victim, in which he claimed that
the sex was consensual; and (4) a wealth of other physical and testimonial evidence linking
him to the murder. The State neither needed, nor relied upon, the CBLA evidence. A
reasonable person could be confident, beyond a reasonable doubt, that this perhaps
improperly admitted evidence did not contribute to applicant's conviction. 

 Because applicant has not alleged facts that would, if true, show that he is actually
innocent of capital murder or show that his constitutional right to due process was violated
by the admission of the CBLA testimony, I agree that he has not surmounted the Section 5 
procedural bar against subsequent writ applications.

Filed: April 16, 2010

Do Not Publish

 
1. There is no such testimony by the FBI expert in this particular case, at least in the trial
record excerpts attached to applicant's subsequent writ, connecting the crime-scene bullet lead
with the bullets in applicant's possession. The witness simply testified to the unremarkable (and
not particularly probative) fact that both bullets were "analytically indistinguishable" and
therefore probably came from "the same pot of lead" at the factory. The NRC Report indicated
that this specific testimony has a reasonable scientific basis, although it was skeptical of making
it a "match" because there have been insufficient studies concerning the statistical likelihood of
"analytically indistinguishable" bullet lead coming from different "pots of lead." National
Research Council, Committee on Scientific Assessment of Bullet Lead Elemental
Composition Comparison, Forensic Analysis: Weighing Bullet Lead Evidence 7 (2004)
(NRC Report) (available at: http//www.nap.edu/catalog.php?record_id=10924).
2. See, e.g., Neal v. Cain, 141 F.3d 207 (5th Cir. 1998) ("We will not grant habeas relief
for errors in a trial court's evidentiary rulings unless those errors result in a 'denial of
fundamental fairness' under the Due Process Clause. . . . The erroneous admission of prejudicial
evidence will justify habeas relief only if the admission was a crucial, highly significant factor in
the defendant's conviction. "); Kittelson v. Dretke, 426 F.3d 306, 320 (5th Cir. 2005) (same); see
also Jones v. Class, 578 N.W.2d 154 (S.D. 1998) ("It is a rare evidentiary question that rises to
the lofty heights of a constitutional violation . . . . The habeas petitioner must establish an error
which demonstrates a violation of due process. This burden is much greater than that required on
direct appeal and is even greater than the showing of plain error on direct appeal.") (internal
quotation omitted).